UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO.: 3:05-cv-612-R

CASEY WILLIAM HYLAND, et. al.,
PLAINTIFFS

v.

HOMESERVICES OF AMERICA, INC., et. al.,                                         DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the Court on the Defendants' Motion to Dismiss (Docket #80) the Plaintiffs' Amended Complaint. The Plaintiffs, Casey W. Hyland, Graham Pullen and Christopher R. Burnette ("Plaintiffs") have responded to the Defendants' motion (Docket #96), and the Defendants, Homeservices of America, Inc., Homeservices of Kentucky, Inc., Rector-Hayden Realtors, RE/MAX, Century 21 Real Estate Corp., Coldwell Banker Real Estate Corporation, Coldwell Banker McMahan Co., Re/Max International Inc., Re/Max Connections, Re/Max Properties East, Century 21 Real Estate LLC, and Cendant Corporation, NRT Inc., have replied (Docket #106). This matter is now ripe for adjudication. For the following reasons, the Defendants' Motion to Dismiss is **GRANTED**.

**BACKGROUND**

The Plaintiffs purchased real estate in the Commonwealth of Kentucky sometime between January 1, 1991 through the present, and as such, the Plaintiffs seek to represent a class of persons and/or entities who purchased real estate during this class period. The Plaintiffs allege that they each indirectly paid a 6% commission to their respective brokers. However, both parties concur that the sellers of the real estate, not the purchaser-Plaintiffs, paid the 6% commission to their agents, and the agents subsequently split the commissions with the brokers

of the Plaintiffs following completion of the sales. The Plaintiffs characterize the dealings between the agents and brokers as illegal price-fixing, claiming that these transaction are violations of Section 4 of the Clayton Antitrust Act. In their motion to dismiss, the Defendants contend that the Plaintiffs do not have standing under both Article III, Sec. 2 of the United States Constitution and the Section 4 of the Clayton Antitrust Act because they have not suffered an injury as purchasers of the real estate.

## STANDARD

The justiciability doctrines determine what matters federal courts can hear and decide, and what matters must be dismissed as a matter of law. *See Warth v. Seldin*, 422 U.S. 490 (1975). Within Article III of the United States Constitution, the "words [cases and controversies] define the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to other branches of government." *Flast v. Cohen*, 392 U.S. 83, 95 (1968); U.S. CONST. art III. Included within the justiciability doctrines is standing, in which the United States Supreme Court has stated that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth*, 422 U.S. at 498. Standing requires a plaintiff to allege "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204 (1962).

## DISCUSSION

In order to demonstrate standing, a plaintiff must first (1) allege that he/she has suffered or imminently will suffer an injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992).

Second (2), the plaintiff must allege that the injury is fairly traceable to the defendant's conduct. *Allen v. Wright*, 468 U.S. 737, 758-59 (1984). Third (3), the plaintiff must allege that a favorable federal court decision is likely to redress the injury. *Id.*

Section 4 of the Clayton Antitrust Act states "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15(a).

In *Kansas v. UtiliCorp United, Inc.*, the United States Supreme Court held that when suppliers violate antitrust laws by overcharging a public utility for natural gas, and the utility passes the overcharge to its customers, only the utility has a cause of action under § 4 of the Clayton Antitrust Act against the suppliers. *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 216-218 (1990). The Court reasoned that the customers in that matter had not suffered an injury because under the guise of the "direct purchaser rule," only the utilities who had directly purchased from the suppliers could allege a price-fixing claim against them. *Id.* at 209-210. The Court held that indirect purchasers, such as the customers, cannot bring claims for price-fixing under the Clayton Antitrust Act because such suits would complicate apportionment calculations and would not promote the goal of enforcing antitrust laws. *Id.* at 209 (citing *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 493 (1968)); *see also Illinois Brick Co. v. Illinois*, 431 U.S. 720, 740-742 (1977). Ultimately, the Court determined that the customers, as indirect purchasers, did not have standing to bring a claim under the Clayton Antitrust Act

because they had not suffered a direct injury traceable to the conduct of the suppliers and only one class of purchasers (the utilities) had standing to sue under Section 4. *UtiliCorp United, Inc.* at 217-18.

      In the instant case, similar to the customers in *UtiliCorp United, Inc.*, the Plaintiffs are indirect purchasers for purposes of Section 4 of the Clayton Antitrust Act. The 6% commission charged to the sellers by their agents was not directly applied or traceable to the Plaintiffs. The sellers in this matter directly purchased the services of their agents, and as such, were charged the 6% commission. Any relation between the charged commissions and the Plaintiffs does not rise to an injury for purposes of a Section 4 violation. The direct purchaser rule precludes suits such as the Plaintiffs under Section 4 because the Plaintiffs cannot show that they suffered an injury. *Id.* Further, even assuming a violation did occur, the sellers, not the Plaintiffs as purchasers, would be the only class entitled to bring a claim under antitrust laws. *Id.* Accordingly, the Plaintiffs do not have standing to bring their claims before the Court because the Plaintiffs have not suffered an injury traceable to the conduct of the brokers and agents stemming from the charged 6% commission to the sellers for their agents' services.

## CONCLUSION

      For the foregoing reasons, the Defendants' Motion to Dismiss is **GRANTED**. Accordingly, this matter is **DISMISSED** as a matter of law.

      An appropriate order shall issue.