UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO.: 3:05-cv-612-R

CASEY WILLIAM HYLAND, et. al.,
PLAINTIFFS

v.

HOMESERVICES OF AMERICA, INC., et. al.,                                    DEFENDANTS

## OPINION & ORDER

This matter comes before the Court on the Defendants' Motion to Dismiss (Docket #79)

the Plaintiffs' Amended Complaint.  The Plaintiffs, Casey W. Hyland, Graham Pullen and

Christopher R. Burnette ("Plaintiffs") have responded to the Defendants' motion (Docket #93),

and the Defendants, Coldwell Banker Real Estate Corporation ("CBREC"), Century 21 Real

Estate LLC ("Century 21"), Cendant Corporation ("Cendant"), and NRT Inc. ("NRT"), have

replied (Docket #107).  This matter is now ripe for adjudication.  For the following reasons, the

Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

The Plaintiffs are purchasers and sellers of real estate in the Commonwealth of Kentucky

sometime between January 1, 1991 through the present, and as such, the Plaintiffs seek to

represent a class of persons and/or entities who purchased and/or sold real estate during this class

period.  The Plaintiffs allege that they each indirectly or directly paid a 6% commission to their

respective brokers depending upon if they were the buyer or seller.  However, both parties

concur that the sellers of the real estate, not the purchaser-Plaintiffs, paid the 6% commission to

their agents, and the agents subsequently split the commissions with the brokers of the

purchaser-Plaintiffs following completion of the sales.  The Plaintiffs characterize the dealings

between the agents and brokers as illegal price-fixing, claiming that these transactions are violations of Section 4 of the Clayton Antitrust Act and Section 1 of the Sherman Act.

## STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)[] of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)). Denial of the motion is proper "unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Nonetheless, unwarranted factual inferences or legal conclusions masquerading as fact will not prevent a motion to dismiss. *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997) (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

## DISCUSSION

In their motion to dismiss, the Defendants' contend that the Plaintiffs' claims against them fail as a matter of law because: 1) the amended complaint fails to state a claim against Cendant; 2) the Court lacks personal jurisdiction over NRT; and 3) the amended complaint fails to state a claim against the franchisors, CBREC and Century 21. The Court will address each of these arguments individually.

2

### 1. Claims Against Cendant

The Defendants contend that there are no allegations within the amended complaint that hold Cendant directly responsible for the alleged damages, and therefore, the claims against Cendant fail as a matter of law.  The Defendants argue that the only way Cendant, as the parent company of Century 21, CBREC and NRT, may be liable for the actions of its subsidiaries is only when the "corporate veil" is pierced, and that the Plaintiffs did not properly allege this in their amended complaint.  However, the Plaintiffs assert that their claim against Cendant does not arise through piercing the corporate veil, but instead that their claim is against Cendant directly, through acting in concert with its subsidiaries to commit wrongs against the Plaintiffs. Further, the Plaintiffs allege that the relationship between Cendant and its subsidiaries is a "probable" agency relationship, which differs from liability under piercing the corporate veil.

In an antitrust action, "dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Hospital Bldg. Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 746 (1976).  A court reviews a plaintiff's antitrust claim under the "test of sufficiency" to determine whether the claim should go forward or is "wholly frivolous." *Kentucky Speedway, LLC v. National Ass'n of Stock Car Auto Racing, Inc.*, 410 F. Supp.2d 592, 595 (E.D. Ky. 2006)(citing *Radovich v. National Football League*, 352 U.S. 445, 453 (1957)). "'While the complaint might have been more precise' it would not be dismissed where the Court was 'not prepared to say that nothing can be extracted from [it] that falls under the Act of Congress.'" *Id.* at 595 (citing *Radovich* at 453).

In reviewing the amended complaint as well as the Plaintiffs' response to the Defendants' motion to dismiss, the Plaintiffs have not alleged any specific acts taken by Cendant that would

suggest that Cendant directly harmed the Plaintiffs.  However, at this juncture, the Plaintiffs do not need to allege specific facts in order to meet the pleading requirements of FRCP 8.  *See Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 681 (6th Cir. 1988)(holding that "the test for the sufficiency of a complaint in an antitrust action is more liberal than the test for claims of fraud under Rule 9(b), and is guided by the 'short, plain and concise' language in Rule 8").  Here, the Plaintiffs have sufficiently alleged that Cendant violated antitrust laws by conspiring through their subsidiaries to fix prices and avoid price competition.  Accordingly, at this juncture, the Plaintiffs' claims against Cendant shall go forward.[1]

## 2. Personal Jurisdiction over NRT

The Defendants contend that the Court lacks personal jurisdiction over Defendant NRT because NRT has no contacts with the Commonwealth of Kentucky.  Specifically, the Defendants argue that neither the Clayton Act nor the traditional minimum contacts test confers personal jurisdiction over NRT, and therefore, the Court should dismiss NRT as a Defendant. While NRT recognizes that one its subsidiaries, Coldwell Banker Residential Real Estate, Inc. ("CBRRE"), is a licensed real estate broker that conducts business in Kentucky, NRT asserts that they are separate legal entities and that personal jurisdiction over a subsidiary does not necessarily mean that the forum has personal jurisdiction over the parent company.

In their response, the Plaintiffs claim that the Court has personal jurisdiction over NRT not through its subsidiary, but instead through NRT's own conduct.  The Plaintiffs allege that

---

[1]At this time, the Court shall not address the arguments concerning whether or not the Plaintiffs need to pierce the corporate veil to recover from Cendant or whether an agency relationship exists.  The Defendants sought to dismiss the claim against Cendant contending that the Plaintiffs had not properly asserted a claim against it.  The Court interprets the Amended Complaint of the Plaintiffs as asserting a direct claim against Cendant, not an attempt to recover against it through its subsidiaries.  Whether or not these claims shall go forward will become more clear after discovery takes place.

4

their amended complaint meets their *prima facie* burden of proving that this Court has personal jurisdiction over NRT because the amended complaint states that NRT not only owned CBRRE, but also operated CBRRE.  Specifically, the Plaintiffs point to Paragraph 29 of the Amended Complaint, which describes NRT as "the largest residential real estate brokerage company in the nation,"and noting that NRT does business under the "Coldwell Banker" brand name.  In addition, in their response, the Plaintiffs refer to CBRRE's website that allegedly states CBRRE is "owned and operated" by NRT.  The Plaintiffs contend that because NRT operates CBRRE, NRT is transacting business in Kentucky, and therefore, NRT, by virtue of its operation of CBRRE, transacts business in Kentucky for the purpose of establishing personal jurisdiction.  Lastly, the Plaintiffs contend that venue over NRT can be established under an agency theory due to the lack of corporate distinctiveness between NRT and CBRRE.

The Plaintiffs have the burden of proving that the Court has personal jurisdiction over NRT. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).  As the Court *only* relies upon the pleadings and affidavits of the parties, the Plaintiffs "need only make a *prima facie* showing of jurisdiction." *Id.* (emphasis added); *see also Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981).  The Court "will not consider facts proffered by the defendant that conflict with those offered by the plaintiff." *Id.*  In addition, the Court views the facts in a light most favorable to the nonmoving party. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

Section 12 of the Clayton Act, 15 U.S.C. § 22, states:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be

5

found.

Courts have held that though this provision provides a nationwide service of process, proper

venue is still required in order to confer personal jurisdiction. *See Goldlawr, Inc. v. Heiman*, 369

U.S. 463, 464-67 (1962)(recognizing that defendants must be inhabitants of, "found" in or

transacting business for purposes of establishing venue under Section 12 of the Clayton Act);

*Kentucky Speedway, LLC v. National Ass'n of Stock Car Auto Racing, Inc*., 410 F. Supp. 2d 592,

600 (E.D. Ky. 2006); *Chrysler Corp.*, 643 F.2d at 1238 n. 3; *Phillip Gall and Son v. Garcia

Corp.*, 340 F. Supp.1255, 1257-58 (E.D. Ky. 1972).  "Venue in this court would only be proper

if it could be determined that the objecting defendants were inhabitants of, could be found in, or

transacted business within the district." *Garcia Corp.* at 1258; *see also Heiman*, 369 U.S. at 464.

The United States District Court for the Eastern District of Kentucky has stated that under the

Clayton Act:

> [i]n determining whether or not [a defendant] is transacting business within the
> meaning of the venue statute, the court must consider these various items, not
> separately, but collectively. Standing alone, one act of advertising or promotion of
> sales, or one category of such practice might not be sufficient, but to consider the
> whole evidence of the continuous, persistent and almost daily conduct of this
> defendant to further stimulate the sales of its products to be anything other than
> doing business is to deny an absolute fact.

*Crawford Transport Co. v. Chrysler Corp.*, 191 F. Supp. 223, 226 (E.D. Ky. 1961).

A parent company "may be subject to personal jurisdiction in a state where its subsidiary

is doing business, provided that the corporate separation is fictitious, the parent has held the

subsidiary out as an agent, or the parent has exercised undue control over the subsidiary."

*Velandra v. Regis Nationale des Usines Renault*, 336 F.2d 292, 296-97 (6th Cir. 1964).

However, the ultimate question is whether the parent itself has the minimum contacts with the

state. *Id.*  Whether a foreign defendant owns a subsidiary is only one part of the analysis, but this relationship alone does not establish personal jurisdiction. *Id.*; *see also Schwartz v. Elec. Data Sys., Inc.*, 913 F.2d 279 (6th Cir. 1990).  As such, personal jurisdiction over a parent company does not arise simply because the forum state has jurisdiction over one of its subsidiaries. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1273-74 (6th Cir. 1998).  Courts must look at what the parent has done, not the subsidiary. *Id.* at 1274.  Unless the plaintiff clearly shows otherwise, the Court shall presume that the parent and subsidiary are separate entities. *Id.* at 1273-74.  "'Additionally, in the face of a properly supported motion for dismissal, ***the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction***.' *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991)." *Oasis Entertainment Complex, Inc. v. Lawrence*, 181 F.3d 102, *1 (6th Cir. May 7, 1999)(emphasis added).

In *Garcia Corp.*, the Court examined whether foreign-parent corporations "transacted business" in Kentucky to establish venue under Section 12 of the Clayton Act. *Garcia Corp.*, 340 F. Supp at 1258.  The Court noted that "in order to come within the purview of the 'transacts business' clause, the corporation's activities within the district must be *substantial*." *Id.* (emphasis added).  The Court found that there was no evidence that indicated the foreign-parent corporations had undertaken any business in Kentucky. *Id.*  While the Court did recognize that "[v]enue over a foreign parent corporation may be based upon the activities of its local subsidiary if the relationship between the subsidiary and parent is such that the subsidiary must be considered an agent of the parent corporation," the Court ultimately held that venue was not appropriate under Section 12 of the Clayton Act, and therefore, the Court could not assume

7

personal jurisdiction over the foreign parent corporation. *Id.* at 1259.  The Court reasoned that

the plaintiff had simply demonstrated that a parent-subsidiary relationship existed between the

two separate legal entities, but the plaintiff had not proven that the parent transacted business in

Kentucky. *Id.*

   The Sixth Circuit Court of Appeals, in *Dean*, addressed whether a foreign defendant, who

was a parent company of a Kentucky subsidiary, purposefully availed itself to the

Commonwealth by conducting activities within Kentucky. *Dean*, 134 F.3d at 1273-74.  In

determining whether personal jurisdiction within Kentucky was appropriate, the Court stated:

> [t]he standards for establishing personal jurisdiction under the Kentucky long-arm
> statute are well-established: the Kentucky long-arm statute has been understood to
> reach the limit permitted by the Constitution. Thus, the single issue is whether the
> jurisdiction sought is within the requirements of due process. We have historically
> employed the following criteria to determine if personal jurisdiction is appropriate:
> First, the defendant must purposefully avail himself of the privilege of acting in the
> forum state or causing consequence in the forum state. Second, the cause of action
> must arise from the defendant's activities there. Finally, the acts of the defendant or
> consequences must have a substantial enough connection with the forum state to
> make the exercise of jurisdiction over the defendant reasonable.

*Dean* at 1273 (citing *Tobin v. Astra Pharmaceutical Products, Inc.*, 993 F.2d 528, 542-43 (6th

Cir.1993)) (citations omitted), *cert. denied*, 510 U.S. 914, 114 S.Ct. 304, 126 L.Ed.2d 252 (1993)

(applying *Southern Machine Co. v. Mohasco Indust., Inc.*, 401 F.2d 374, 381 (6th Cir.1968)); *see*

*Friction Materials Co. v. Stinson*, 833 S.W.2d 388, 390 (Ky.Ct.App.1992) (applying *Southern*

*Machine*) .  The Court noted that "[t]he 'sine qua non' of personal jurisdiction is the purposeful

availment factor, [] under which the defendant must 'purposefully avail[ ] itself of the privilege

of conducting activities within the forum State, thus invoking the benefits and protections of its

laws.'" *Id.* at 1273 (citing *Southern Machine*, 401 F.2d at 381-82; *quoting Burger King v.*

*Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)).

In *Dean*, the foreign parent company had a controlling interest in the local Motel 6. *Dean* at 1273-74.  The Court noted that while the plaintiff *suggested* that "an integrated business relationship between Accor[, the parent,] and Motel 6 Operating[, the subsidiary], she does not provide any *direct* evidence of Accor's involvement of the Richmond Motel 6."  *Id.* at 1274 (emphasis added).  As such, the Court found there was no evidence that the parent "did business" in Kentucky, "or took *any* affirmative actions relation to Kentucky beyond merely owning" the subsidiary, and therefore, there was "no purposeful availment and no personal jurisdiction." *Id.* (emphasis in original).

The United States District Court for the Western District of Kentucky, in a case decided by Chief Judge Heyburn, examined whether the plaintiff had met its *prima facie* burden of proving that personal jurisdiction existed over a foreign-parent corporation who had a subsidiary in Kentucky. *Martin v. Southern Indiana Treatment Center, Inc.*, 2004 WL 2595946, *2 (W.D. Ky. May 27, 2004).  In granting the parent corporation's motion to dismiss, the Court reasoned that the plaintiff "has not submitted a single affidavit in support of its claim that personal jurisdiction exists over National[, the parent corporation].  Plaintiff states that 'National plainly has sufficient contacts with this forum because...National not only owns but effectively operates SITC[, the subsidiary]...[t]he evidence does not show National taking actions in Kentucky under its own name." *Id.*  The Court also noted that the plaintiff failed "to identify any aspects of SITC's daily operation that National controls in a manner that makes SITC National's alter ego." *Id.*  The Court ultimately held that because the plaintiff failed to show any contacts by the parent directly with the Commonwealth of Kentucky and failed to provide any evidence that the parent controls the subsidiary, the plaintiff did not meet its *prima facie* burden, and therefore, the Court

could not exercise jurisdiction over the parent corporation. *Id.* at 3. *See also Kasp v. Adesa Lexington, LLC*, 2006 WL 385310, *11-12 (E.D. Ky. Feb. 17, 2006)(citing *Martin*, and holding that the plaintiff failed to establish personal jurisdiction over a foreign-parent corporation because the parent did not have sufficient minimum contacts with the Commonweath of Kentucky).

In *Lawrence*, the Sixth Circuit examined the district court's dismissal of a foreign defendant from a case due to lack of personal jurisdiction. *Lawrence*, 181 F.3d at *1. The Court upheld the decision by the district court reasoning that the plaintiff failed to provide evidence of the contacts between the foreign defendant and the State of Ohio. *Id.* In addition to the long arm statute argument, the plaintiff also made an argument under agency law in an attempt to demonstrate that Ohio had personal jurisdiction over the foreign defendant. *Id.* However, the Court affirmed the rationale of the district court in holding that the court did not have personal jurisdiction under an agency theory, noting that under this theory the plaintiff had not alleged nor provided sufficient facts that showed the foreign defendant had intended for the agent to act on his behalf, and therefore, the court did not have personal jurisdiction. *Id.*

In the instant case, while Defendant NRT and CBRRE share a parent-subsidiary relationship, NRT is a separate legal entity from CBRRE, as NRT is a Delaware corporation with its principal place of business in New Jersey. In looking at the three (3) arguments in which the Plaintiffs assert that the Court has personal jurisdiction over NRT, the Court finds that the Plaintiffs have not met their *prima facie* burden, and therefore, the Court does not have personal jurisdiction over NRT.

Under the nationwide service of process provision under Section 12 of the Clayton, the

10

Plaintiffs have not demonstrated that NRT inhabits, can be found in, or transacts business in Kentucky.  Similar to *Garcia Corp.*, the Plaintiffs in this matter have not shown through its complaint or affidavits that the business conducted by NRT in this venue was *substantial*, in order to satisfy the transacts business clause under Section 12. *See Garcia Corp.* at 1258-59. The Plaintiffs have merely brought out the existence of a parent-subsidiary relationship, which in itself is not sufficient to establish venue under the Clayton Act.  Accordingly, the Court finds that the Plaintiffs have not established venue under Section 12 of the Clayton Act, and therefore, the Court does not have personal jurisdiction over NRT under the nationwide service of process provision.

Under the Kentucky long arm statute, the Plaintiffs have not demonstrated that NRT has sufficient minimum contacts with Kentucky to establish personal jurisdiction.  Similar to *Martin*, where the Court determined that merely alleging that the foreign parent corporation operated the subsidiary without offering any specific facts to back it up did not confer personal jurisdiction over the parent, here, the Plaintiffs have not demonstrated that NRT took actions in Kentucky under its own name. *See Martin* at *2.  In addition, the Plaintiffs failed to identify any aspects of the daily involvement of NRT in running CBRRE, nor have they cited any specific conduct taken by NRT that could be interpreted as controlling the operations of CBRRE.  As noted *supra*, the Plaintiffs have only established that a parent-subsidiary relationship exists between NRT and CBRRE.  As held by the Sixth Circuit Court of Appeals in *Dean*, personal jurisdiction over a parent company does not arise simply because the forum state has jurisdiction over one of its subsidiaries. *Dean*, 134 F.3d at 1273-74.  Accordingly, the Court finds that the Plaintiffs have not shown that NRT has made any contacts with the Commonwealth of Kentucky for purposes

of establishing personal jurisdiction under the Kentucky long arm statute.

Lastly, under an agency theory, the Plaintiffs have not established that the Court has personal jurisdiction over NRT.  Here, similar to *Lawrence*, the Plaintiffs have not offered any indication that NRT sought to let CBRRE act on its behalf. *Lawrence*, 181 F.3d at *1.  The Plaintiffs did not allege this argument in their complaint, nor have they filed any affidavits supporting this contention.  Accordingly, the Court finds that the Plaintiffs have not shown that NRT held out CBRRE as its agent for purposes of establishing personal jurisdiction.

The Court finds that because it does not have personal jurisdiction over NRT, Defendant NRT shall be dismissed from this action.

### 3. Claims Against the Franchisors - Century 21 and CBREC

The Defendants contend that the amended complaint fails to state a claim against the franchisors, Century 21 and CBREC.  Specifically, the Defendants assert that: the amended complaint does not explicitly allege that the franchisors controlled the day-to-day operations of their respected broker-franchisees (a lack of an agency relationship); the franchise agreements do not contain any language that could be read as establishing an apparent agency (apparent authority) relationship; and the amended complaint fails to state a claim of direct antitrust liability against the franchisors.

In their response, the Plaintiffs argue that the amended complaint sufficiently alleged facts that established antitrust claims against the franchisors under vicarious liability theories of actual agency, apparent agency and joint venture.  In addition, the Plaintiffs contend that they set out proper factual allegations in their amended complaint to support a finding of direct liability against the franchisors.  Lastly, the Plaintiffs assert that they have, at minimum, set forth

12

sufficient allegations in their amended complaint to have their claims against the franchisors go forward to the discovery phase.

The Court must determine what exactly the Plaintiffs have alleged against the Defendants in their amended complaint, and whether these allegations are sufficient to hold the Defendants in this litigation.  In reviewing the amended complaint and the arguments put forth by the parties, the Court finds that the Plaintiffs have sufficiently alleged antitrust causes of action against the Defendant-Franchisors under FRCP 8.

As stated *supra*, in an antitrust action, "dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Hospital Bldg. Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 746 (1976).  A court reviews a plaintiff's antitrust claim under the "test of sufficiency" to determine whether the claim should go forward or is "wholly frivolous." *Kentucky Speedway, LLC v. National Ass'n of Stock Car Auto Racing, Inc.*, 410 F. Supp.2d 592, 595 (E.D. Ky. 2006)(citing *Radovich v. National Football League*, 352 U.S. 445, 453 (1957)). "'While the complaint might have been more precise' it would not be dismissed where the Court was 'not prepared to say that nothing can be extracted from [it] that falls under the Act of Congress.'" *Id.* at 595 (citing *Radovich* at 453).  At this juncture, the Plaintiffs do not need to allege specific facts in order to meet the pleading requirements of FRCP 8. *See Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 681 (6th Cir. 1988)(holding that "the test for the sufficiency of a complaint in an antitrust action is more liberal than the test for claims of fraud under Rule 9(b), and is guided by the 'short, plain and concise' language in Rule 8").

The Franchisor-Defendants argue that the Plaintiffs' claims for vicarious liability fail as a matter of law as well as for failure to state a claim.  However, courts have recognized antitrust

13

vicarious liability claims between franchisors and franchisees under a theory of actual agency.

*See Raines v. Shoney's, Inc.*, 909 F. Supp. 1070, 1078 (E.D. Tenn.1995); *Taylor v. Checkrite, Ltd.*, 627 F.Supp. 415, 416 (S.D. Ohio 1986); *Broock v. Nutri/System, Inc*. 654 F. Supp. 7, 9 (S.D. Ohio 1986).  In addition, contrary to the assertion by the Defendants,

> a principal may be vicariously liable for an agent's tortious conduct based upon an apparent authority theory, if the principal cloaked its agent with apparent authority, i.e., held the agent out to third parties as possessing sufficient authority to commit the particular act in question, and there was reliance upon the apparent authority. *See Restatement (Second) Agency* § 8, at p. 30 (1958); Id.  § 219(2)(d), at p. 481; *American Soc'y of Mechanical Eng'rs, Inc. v. Hydrolevel Corp.* ("*ASME*"), 456 U.S. 556, 566-67, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982) (reviewing theory of apparent authority in context of antitrust liability issue). Under an apparent authority theory, vicarious "[l]iability is based upon the fact that the agent's position facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business provided to him." *Id.* at 566, 102 S.Ct. 1935. Accordingly, liability may be imposed on a principal under an apparent authority theory irrespective of whether the agent acted for his own purposes, rather than those of his principal. See Restatement (Second) Agency § 262, at p. 571 (1958).

*Jones v. Federated Financial Reserve Corp*., 144 F.3d 961, 965 (6th Cir. 1998); *see also Kosters v. Seven-Up Co.*, 595 F.2d 347, 352 (6th Cir. 1979)(noting in dicta that a "consumer may attempt to hold the franchisor liable for the conduct of the franchisee under the agency doctrines of Respondeat superior or apparent authority."); *Sims v. Marriott Intern., Inc.*, 184 F. Supp.2d 616, 617 (W.D. Ky. 2001)(holding "[w]hile the franchise agreement does not create an agency relationship, it does not shield other actions of the parties from creating apparent agency. A reasonable jury could conclude that the Nassau Marriott was the apparent agent of Marriott.").[2]

---

[2]The Court does concur with the Defendants that the claim against the franchisors for price-fixing under a theory of joint venture liability fails for failure to a state claim.  The amended complaint did not assert the elements of a joint venture, and therefore, failed to inform the Defendants that the nature of their vicarious liability claim against them was predicated on a theory of joint venture. *See Crichton v. Golden Rule Ins. Co.*, 295 Ill .Dec. 393, 403-04 (Ill. App. 2005).

14

Here, similar to *Sims*, while the franchise agreement may not explicitly create an agency relationship, the Plaintiffs have sufficiently alleged enough facts in their amended complaint to sustain vicarious liability claims against Century 21 and CBREC under agency and apparent authority theories.  Paragraph 58(u) of the amended complaint properly put the Defendants on notice of these claims, emphasizing that the franchisors had control of the actions of the franchisees, that the Defendant participated with the franchisees in the setting of prices, and that the Defendant "conditioned and controlled the culture" of the franchisees.  As noted *supra*, the Plaintiffs do not need to allege specific facts in order to meet the pleading requirements of FRCP 8. *See Michaels Bldg.*, 848 F.2d at 681.  Accordingly, the Court finds that the Plaintiffs have sufficiently alleged vicarious liability claims against the Franchisor-Defendants under theories of actual and apparent authority.[3]

## CONCLUSION

**IT IS SO ORDERED:**

For the foregoing reasons, the Defendants' Motion to Dismiss (Docket #79) is **GRANTED in part** and **DENIED in part**.  The claims against Cendant shall go forward at this time.  In addition, the vicarious liability claims against Century 21 and CBREC under theories of actual and apparent authority shall go forward at this time.  However, the Court does not have personal jurisdiction over Defendant NRT, and therefore, NRT is dismissed from this matter. Lastly, the vicarious liability claims against Century 21 and CBREC under a theory of joint venture liability fail as a matter of law.

---

[3]See also the Court's Opinion and Order addressing RE/MAX International's Motion to Dismiss (Docket #82).

15