UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:05-CV-612-R

CASEY WILLIAM HYLAND, ET AL.,                                            PLAINTIFFS

v.

HOMESERVICES OF AMERICA, INC., ET AL.,                              DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the Court on Defendants Suzy Watkins and Re/Max Properties East's Motion to Dismiss (Docket #240). Plaintiff Christopher Burnette has responded (Docket #245). Defendants have replied (Docket #250). This matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion to Dismiss is DENIED.

**BACKGROUND**

Plaintiffs Casey Hyland and Graham Pullen ("Initial Plaintiffs") brought this suit pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, alleging that Defendants engaged in illegal price fixing to artificially inflate the percentage of commissions charged by real estate brokers for the purchase of real estate in Kentucky. The Initial Plaintiffs were purchasers of real estate who allegedly paid a higher price for the real estate due to Defendants' price fixing. On March 13, 2006, Defendants filed a joint motion to dismiss this action, arguing that the Initial Plaintiffs lacked standing to sue under Article III of the United States Constitution. Defendants also argued that Plaintiffs lacked "antitrust standing," as required to bring suit under Section 4 of the Clayton Act.

On July 26, 2006, the Initial Plaintiffs amended their Complaint to add Christopher

Burnette as a plaintiff. Unlike the Initial Plaintiffs, Burnette was a seller of real estate, not a purchaser.

On December 1, 2006, the Court granted Defendants' motion for to dismiss. Although the Court set out the standard for Article III standing in the Opinion, the Court dismissed the claims based on the Initial Plaintiffs' lack of antitrust standing. On December 22, 2006, the Court reinstated the Burnette's claims, as he was mistakenly dismissed from this action. Defendants now argue that Burnette lacks standing under Article III to continue with this action, and as such his claims should be dismissed for lack of subject matter jurisdiction.

## DISCUSSION

### I. Legal Background

The existence of antitrust standing is a threshold, pleading-stage inquiry, which if absent requires dismissal of the antitrust claim as a matter of law under Rule 12(b)(6). *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 449-450 (6th Cir. 2007). In the present matter, the Court found that the Initial Plaintiffs lacked antitrust standing under the "direct purchaser rule." Under Supreme Court precedent, indirect purchasers cannot bring an antitrust claim by arguing that the direct purchaser passed on the costs of the defendant's antitrust violation, because allowing such a claim would complicate apportionment calculations and would not promote the goal of enforcing antitrust laws. *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 209 (1990) (citing *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 493 (1968)); *See also Illinois Brick Co. v. Illinois*, 431 U.S. 720, 740-742 (1977).

"[A]ntitrust standing and Article III standing are not one and the same." *NicSand, Inc.*, 507 F.3d at 499. A lack of antitrust standing is not a jurisdictional defect. *In re Lorazepam &*

*Clorazepate Antitrust Litig.*, 289 F.3d 98, 107-08 (D.C. Cir. 2002) (citing *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 535 n. 31 (1983)). As such, the Court's subject matter jurisdiction is not dependant on whether the Initial Plaintiffs had antitrust standing at the inception of this action. *See NicSand, Inc.,* 507 F.3d at 449-51 (holding that plaintiffs had Article III standing, while dismissing plaintiff's claims for lack of antitrust standing).

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *National Rifle Ass'n of America v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). The "Case or Controversy" requirement limits the Court's authority to legal issues "which are traditionally thought to be capable of resolution through judicial process." *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.,* 470 F.3d 286, 291 (6th Cir. 2006). The purpose behind this limitation on the authority of federal courts is "to insure that the litigants possess 'a personal stake in the outcome of the controversy.'" *Id.* (citing *Baker v. Carr*, 369 U.S. 186, 208 (1962)).

"Article III standing is a jurisdictional requirement that cannot be waived, and . . . may be brought up at any time in the proceeding." *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002). If a plaintiff does not have Article III standing, he cannot later create subject matter jurisdiction by adding a plaintiff who has Article III standing. *Iron Cloud v. Sullivan*, 984 F.2d 241, 243-44 (8th Cir. 1993).

In order to demonstrate Article III standing, a plaintiff must first alleged that he has suffered an injury that is (a) concrete and particularized, and (b) actual or imminent rather than conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Second,

the alleged injury must be fairly traceable to the defendant's conduct, and not be the result of the independent action of a third party.  *Id.*  Third, the plaintiff must allege that a favorable federal court decision is likely to redress the alleged injury.  *Id.* at 561.

The Court is finds, and the parties have not disputed, that Burnette satisfies the three elements of Article III standing.  The Court would have subject matter jurisdiction over this action had Burnette been an initial plaintiff.  However, as Burnette was brought in as a plaintiff after the commencement of the lawsuit, the issue then becomes whether the Initial Plaintiffs had standing under Article III to bring this action in federal court.  If the Initial Plaintiffs did not have Article III standing, then this action must be dismissed, as they would not have had standing to cure that jurisdictional defect by adding a plaintiff with Article III standing.

## II. The Initial Plaintiffs' Article III Standing

The Initial Plaintiffs alleged a concrete and particularized injury when they claimed they paid more for the real estate than they otherwise would have due to Defendants' violation of federal law.  An economic loss due to paying an illegally inflated price is sufficient to satisfy the injury requirement for Article III standing.  *See Loeb v. Sumitomo Corp.*, 306 F.3d 469, 480-81 (7th Cir. 2002) (holding that paying an inflated price for copper caused by an alleged antitrust violation sufficient for Article III standing).

Defendants argue that Plaintiffs failed to support their claim of injury with empirical data or studies showing that sellers increased the selling price of real estate in response to the allegedly inflated commission rate.  However, in the circumstances currently before the Court, such an evidentiary showing is not necessary for Article III standing.

Each element of Article III standing "must be supported in the same way as any other

matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at successive stages of litigation." *Lujan*, 504 U.S. at 561. "For purposes of ruling on a motion to dismiss for want of standing, . . . courts must accept as true all the material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Coyne v. American Tobacco co.*, 183 F.3d 488, 492 (6th Cir. 1999) (quoting *Warth v. Seldin,* 422 U.S. 490, 501 (1975)). The Court dismissed the Initial Plaintiffs' claim based on the allegations contained in the pleadings. At the time the Initials Plaintiff's claims were dismissed, the litigation was at such a stage to allow the injury requirement to be satisfied by an allegation of an injury. Therefore, it is unnecessary for Burnette to gather evidentiary support for the claims of plaintiffs who have already been dismissed from this action.

The Initial Plaintiffs also alleged an injury that is fairly traceable to Defendants' conduct. It was alleged that Defendants conspired to charge an artificially high commission rate. This artificially inflated commission was then passed on to the purchasers, causing them to pay more for their real estate purchase than they would have otherwise.

The Court's previous ruling that the injury was not directly traceable to Defendants as required for antitrust standing under the direct purchaser rule does not alter this analysis. Article III standing and antitrust standing are separate legal doctrines. Antitrust standing "requires more than the constitutional minimum for the 'case or controversy' that brings jurisdiction to Article III court." *New York v. Microsoft Corp.*, 209 F. Supp 2d 132, 142 (D.C.C. 2002). Therefore, the Court finds that the Initial Plaintiffs satisfied this element of Article III standing, even though they failed to establish antitrust standing.

Finally, a favorable judicial ruling would have redressed the Initial Plaintiffs' alleged

injuries.  The Initial Plaintiffs were requesting money damages, which would have compensated them for the artificially inflated price they paid for their real estate purchases.

The Court finds that the Initial Plaintiffs had standing under the requirements of Article III to bring this lawsuit.  The Initial Plaintiffs alleged an injury that is fairly traceable to Defendants' allegedly unlawful conduct and that would have been redressed by the requested relief.  Therefore, the Court had subject matter jurisdiction over the Initial Plaintiffs' claims at the commencement of this action.  The Court's dismissal of the Initial Plaintiffs under Rule 12(b)(6) does not alter this analysis.  As there has been no argument submitted that subsequent events would remove the Court's jurisdiction, the Court finds that it continues to have subject matter jurisdiction over this action.

## CONCLUSION

For the above reasons, Defendant's Motion to Dismiss is DENIED.

An appropriate order shall issue.