UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:05-CV-612-R

CASEY WILLIAM HYLAND, ET AL.,                                                      PLAINTIFFS

v.

HOMESERVICES OF AMERICA, INC., ET AL.,                                          DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiffs Christopher and Mystic Burnettes's Motion for Class Certification (Docket #242). Defendants have filed a response (Docket #275). Plaintiffs have filed a reply (Docket #299). Defendants have filed a sur-reply (Docket #304). This matter is now ripe for adjudication. For the reasons that follow, Plaintiffs' Motion is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiffs brought this suit pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, based on Defendants' alleged violation of the Sherman Act, 15 U.S.C. § 1. Section 1 of the Sherman Antitrust act forbids combinations or conspiracies in restraint of trade or commerce among the several states. 15 U.S.C. § 1. Plaintiffs allege that between 1991 and 2005 (the "Class Period"), Defendants and their co-conspirators engaged in a conspiracy to inflate the price of commissions charged by real estate brokers for the purchase of real estate in Kentucky.

Specifically, Plaintiffs focus on the alleged standard 6% commission charged by real estate brokers for their services. Plaintiffs allege that in the absence of Defendants' conspiracy, 6% of the purchase price would not be the standard commission charged by brokers.

Furthermore, Plaintiffs allege that Defendants habitually refused to negotiate a lower commission rate. To the extent that Defendants would negotiate, their negotiations were based on the inflated 6% standard, which resulted in buyers paying a higher price than they would have paid in a competitive market, where 6% would not be the starting price for negotiations.

In support of these general allegations, Plaintiffs allege that Defendants and their co-conspirators frequently worked with one another to complete transactions, were aware of the commissions charged by one another, provided similar, virtually standardized services, and would frequently aggregate their services to provide multiple listings of real estate. In addition, Plaintiffs allege that Defendants worked to avoid, suppress, or eliminate price competition from discount brokerage companies. Finally, Plaintiffs argue that Defendants exerted substantial influence over the Kentucky Real Estate Commission to maintain an "anti-rebate" rule to help prevent Defendants from cheating on their price-fixing agreement.

Plaintiffs believe that as a direct result of Defendants' conspiracy to fix the price of real estate brokerage commissions, all persons who paid a commission to Defendants or their affiliates paid a commission higher than they would have paid absent Defendants' unlawful conduct.

Plaintiffs sold real estate in the Commonwealth of Kentucky through one of the Defendants, and as such, seek to represent a class of persons who paid Defendants or their affiliates a real estate brokerage commission during the Class Period. Plaintiffs request that the Court enter an order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Specifically, Plaintiffs request that the Court certify the following class:

> All persons who paid a commission to Defendants and/or their affiliates listed in Exhibit A in connection with the sale of residential real estate (excluding initial sales of newly constructed homes) located in the Commonwealth of Kentucky during the period from October 11, 2001 to October 11, 2005 ("Class Period"). This class excludes governmental entities, Defendants, their parents, subsidiaries, affiliates, and employees of Defendant or their affiliates.

Plaintiff additionally requests that the Court certify the following Subclass:

> All persons who paid a commission to Defendants and/or their affiliates in connection with the sale of residential real estate (excluding initial sales of newly constructed homes) located in the greater Louisville Area, i.e. the following counties: Breckinridge, Bullitt, Carroll, Jefferson, Meade, Oldham, Spencer, and Trimble, during the Class Period. This class excludes governmental entities, Defendants, their parents, subsidiaries, affiliates, and employees of Defendant or their affiliates.

Defendants argue that class certification should be denied because Plaintiffs have failed to show that questions of law or fact common to class members predominate over any questions affecting only individual members, as required by Federal Rule of Civil Procedure 23(b)(3).

## STANDARD

A district court must turn to Federal Rule of Civil Procedure 23 to determine if class certification is warranted. Federal Rule of Civil Procedure 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition to the requirements found in Rule 23(a), a plaintiff must also show that his suit falls within one of the three types of class action under Rule 23(b). Plaintiff is requesting class certification under Rule 23(b)(3), which provides that:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: . . . (3) the court finds that the questions of law or fact

3

>common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

"The only issue before a court on a motion for class certification is whether plaintiff is asserting a claim, which, assuming its merit, will satisfy the requirements of Rule 23." *Little Caesar Enter. v. Smith*, 172 F.R.D. 236, 241 (E.D. Mich. 1997) (internal quotation marks and citation omitted). As such, "[a] Rule 23 determination is wholly procedural and has nothing to do with whether a plaintiff will ultimately prevail on the substantive merits of its claim." *Id.* Therefore, a district court should not conduct an inquiry into the merits of a plaintiff's claims. *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177 (1974). "Courts also assume that the substantive allegations of the complaint are true and that cognizable claims are stated." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 303 (E.D. Mich. 2001).

"Nonetheless, the Court must undertake an analysis of the issues and the nature of required proof at trial to determine whether the matters in dispute and the nature of plaintiffs' proofs are principally individual in nature or are susceptible of common proof equally applicable to all class members." *Little Caesar Enter. v. Smith*, 172 F.R.D. 236, 241 (E.D. Mich. 1997). As such, a district court may look beyond the pleadings in determining whether the claims satisfy the class action rules. *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982). In deciding a motion for class certification, a district court must conduct a rigorous analysis to ensure that the requirements of Rule 23 are satisfied. *Spraque v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). The plaintiff has the burden to establish his right to class certification. *Beattie v. CenturyTel, Inc.*, 511

F.3d 554, 560 (6th Cir. 2007).

## DISCUSSION

### I. Rule 23(a) Requirements

#### A. Numerosity

The first requirement for class certification is that "the class be so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no strict numerical test for determining impracticability of joinder." *In re American Med. Sys. Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). "There is no automatic cut-off point at which the number of plaintiffs makes joinder impractical, thereby making a class-action suit the only viable alternative. However, sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *Bacon v. Honda of Amercia Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (internal citations omitted). In this case, all parties agree that the proposed class contains thousands of members. Given this, the Court finds that the Rule 23(a)(1) requirement is met.

#### B. Commonality

The second requirement for class certification is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Although Rule 23(a)(2) speaks of 'questions' in the plural, . . . there need only be one question common to the class." *Sprague*, 113 F.3d at 397. "It is not every common question that will suffice, however; at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality." *Id.* What the Court must look for "is a common issue the resolution of which will advance the litigation." *Id.*

"Price-fixing cases by their very nature deal with common legal and factual questions about the existence, scope, and extent of the alleged conspiracy." *In re Foundry Resins Antitrust*

*Litigation*, 242 F.R.D. 393, 405 (S.D. Ohio 2007). In this case, every class member that paid a commission to one of the Defendants or their affiliates has a common interest in proving that Defendants engaged in a conspiracy to fix, raise, and maintain brokerage commission rates. Without proving the existence of a conspiracy, none of the class members may recover. The existence and scope of the conspiracy is an issue common to all class members, the resolution of which would advance this litigation. Therefore, the Court finds that the requirements of Rule 23(a)(2) are satisfied.

## C. Typicality

The third requirement for class certification is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A plaintiff's claim is considered 'typical' if it arises from the same course of conduct that gives rise to the claims of the other class members, or if it based on the same legal theory." *In re Foundry*, 242 F.R.D. at 405. The Court must examine "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague*, 133 F.3d at 399. "Courts liberally construe the typicality requirement." *In re Foundry*, 242 F.R.D. at 405.

"In the antitrust context, typicality is established when the named plaintiffs and all class members alleged the same antitrust violations by defendants. Specifically, named plaintiffs' claims are typical in that they must prove a conspiracy, its effectuation, and damages therefrom–precisely what the absent class members must prove to recover." *Id.*

Plaintiffs' allegations are typical of the class members' allegations. Plaintiffs' claims arise from an alleged conspiracy to fix real estate broker's commission rates. Plaintiffs allege that the

6

conspiracy established a supra-competitive 6% standard commission rate. This is the same antitrust violation that any other class member would allege. Plaintiffs allege that they paid a higher rate than they would have absent the conspiracy, which is the same injury allegedly suffered by every class member. Finally, every class member's claim is based on the same legal theory–conspiracy to fix prices in violation of Section 1 of the Sherman Act. Based on this analysis, the Court finds that the requirements of Rule 23(a)(3) are satisfied.

**D. Representativeness.**

The fourth requirement for class certification is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "There are two criteria for determining whether the representation of the class will be adequate: 1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. General Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between the named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997). There is nothing in the record which would indicate that Plaintiffs have a conflict of interest with the class members. Plaintiffs suffered the same alleged injury as the class members, paying more for the services of a real estate broker based on Defendants' conspiracy. Plaintiffs have also diligently prosecuted this action so far. As such, the Court finds that Plaintiffs will vigorously prosecute the interests of the class in this lawsuit.

All class members, including Plaintiffs, have an interest in establishing the existence of the

alleged conspiracy. Plaintiffs, as well as the members of the putative Class, were allegedly injured by Defendants in the same manner and seek substantially identical relief. Therefore, Plaintiffs have the same interests as the Class members in establishing Defendants' liability.

The Court must also look to the adequacy of Plaintiffs representation "to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Stout v. J. D. Byrider*, 228 F.3d 709, 701 (6th Cir. 2000). Plaintiffs' counsel has extensive collective experience in class actions and antitrust litigation. Counsel has so far diligently prosecuted this action. Therefore, the Court finds that the requirements of Rule 23(a)(4) are satisfied.

## II. Rule 23(b) Requirements

"Rule 23(b) requires that (1) questions common to the class predominate over questions affecting only individual members, and (2) class resolution is superior to alternative methods for adjudicating the controversy." *In re Scrap Metal Litigation*, 527 F.3d at 535. "Put differently, the proposed class must be 'sufficiently cohesive to warrant adjudication by representation.'" *Id.*

### A. Predominance

The Rule 23(b)(3) predominance requirement parallels the Rule 23(a)(2) commonality requirement in "that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1084 (6th Cir. 1996). "To satisfy the predominance requirement in Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof . . . predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (internal quotation marks and citation omitted).

8

"There are no bright lines for determining whether common questions predominate. Instead, considering the facts of the case presented, a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis." *In re Cardizem CD Antitrust Litigation*, 200 F.R.D. 297, 307 (E.D. Mich. 2001) (citing *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)).

The Court must determine if the questions common to the class are "at the heart of the litigation." *Powers v. Hamilton County Public Defender Com'n*, 501 F.3d 592, 619 (6th Cir. 2007). "[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988). "The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001). "Common questions need only predominate: they need not be dispositive of the litigation." *Id.*

Plaintiffs allege that Defendants combined, conspired and agreed to fix, maintain and inflate real estate broker commissions in the state of Kentucky real estate. To succeed on these claims, each class member must prove (1) a violation of antitrust law, (2) direct injury (or impact) from the violation, and (3) damages. *In re Foundry*, 242 F.R.D. at 408-409.

In this case, the alleged antitrust violation is a price-fixing conspiracy. Proof of the alleged conspiracy will focus on the actions and conduct of Defendants. *See In re Antitrust Litig.*, 826 F. Supp. at 1039 ("evidence of a national conspiracy to fix the price of catfish and processed catfish would revolve around what Defendants did, and said, if anything, in pursuit of a price fixing

scheme"). Plaintiffs would be required to prove the existence and scope of the alleged conspiracy. Such proof would necessarily focus on the Defendants' conduct, rather than the individual class members. *See In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 187 (D.N.J. 2003) ("common issues predominate when the focus in on the defendants' conduct and not on the conduct of the individual class members").

Defendants' argument that the conspiracy issue requires individualized proof is not persuasive. Defendants argue that Plaintiffs failed to demonstrate that they can prove an antitrust conspiracy to fix real estate commissions with generalized proof. However, Defendants' argument goes to the merits of Plaintiffs' case, rather than focusing on whether Plaintiffs' allegations of conspiracy will be proven by common evidence. To the extent Plaintiffs are successful in proving the existence of a conspiracy, their proof will focus on Defendants' actions. If Plaintiffs have no evidence that Defendants' conspired to fix real estate commissions in Kentucky, then, from the standpoint of judicial economy, it would be preferable to reach an adjudication on the merits on the conspiracy issue as a class action, so as to avoid subsequent lawsuits raising the same issue and offering the same proof.

"In general, a determination that the conspiracy issue is common to all the class members and predominates over any individual issues presents few problems." 7AA Wright & Miller § 1781. "Thus, even where there are individual variations in damages, the requirements of Rule 23(b)(3) are satisfied if the plaintiffs can establish that the defendants conspired to interfere with the free-market pricing structure." *In re Scrap Metal Litig.*, 527 F.3d at 535.

"Where, as here, Plaintiffs have alleged a conspiracy to fix-prices and allocate markets, courts have presumed class-wide impact." *In re Foundry*, 242 F.R.D. at 409. "Courts have

10

generally found that when parties succeed in conspiring to fix prices, everyone who purchases the relevant goods or services are invariably injured." *Id.*

"To show impact is susceptible to class-wide proof, Plaintiffs are not required to show that the fact of injury actually exists for each class member." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001); *see also In re Polypropylene Carpet Antitrust Litig.*, 178 F.R.D. 603, 618 (N.D. Ga. 1997) ("Plaintiffs must show that antitrust impact can be proven with common evidence on a classwide basis; Plaintiffs need not show antitrust impact in fact occurred on a classwide basis."). However, despite the general consensus a conspiracy to fix prices results in a class-wide impact, if the impact issue is so individualized that the conspiracy issue no longer predominates, then class certification would not be appropriate.

Here, Plaintiffs allege that Defendants established a supra-competitive baseline of 6% for all negotiations concerning commission. To the extent that an individual paid more in commissions due to the inflated baseline, despite any negotiations, that class member will have been impacted by the conspiracy. The key issue is determining whether Plaintiffs can prove that Defendants' conspiracy caused the individual agents or franchisees to establish a 6% commission rate.

The evidence Plaintiffs would have to offer to prove that Defendants' actions established a standard 6% commission rate for their individual agents or franchisees would focus on Defendants, rather than the class members, just as is required to prove the conspiracy. Any actions by Defendants to enforce a conspiracy among their agents or franchisees would be specific to that Defendant, but would not vary according the class member. For example, Plaintiffs argue that certain Defendants' commission rates are centered around a 6% commission rate. Other Defendants require a 6% commission rate absent special circumstances, while others require a standard rate of

11

6% while allowing individual negotiations. Even proof that an individual Defendant required a standard commission rate, without specifically requiring a 6% rate, is common evidence of impact of the conspiracy given that Plaintiffs allege the existence of an unspoken price-fixing conspiracy. While not an exhaustive inquiry, this sort of evidence shows that Plaintiff may prove impact on a class-wide basis. To the extent that Plaintiffs are successful in proving that 6% is a conspiratorially established standard, any proof that a Defendants' agents followed the rate would be proof that the class members who hired that particular agent was harmed by the conspiracy.

As additional support of their demonstration of class-wide impact, Plaintiffs have submitted the report of their expert witness, Dr. Gary French. Dr. French intends, after the completion of discovery on the merits, to conduct on econometric analysis to demonstrate class-wide impact. Dr. French proposes to compare the actual commission rates during the Class Period with various benchmarks established by real estate broker commission rates in an area unaffected by the alleged conspiracy. Given the demonstration of proof alleged by Plaintiffs so far, the Court finds that Plaintiffs have sufficiently shown that common issues are the predominant issues concerning proof of impact.

None of Defendants' other arguments alter this analysis. For example, Defendants argue that even if the individual agents used the allegedly unlawful standard rate as a starting point in negotiations, there are too many individualized issues concerning the subsequent negotiations to prevent this class action from turning into a series of mini-trials. However, "[t]he courts have rejected similar arguments, despite differences in prices paid by class members, where the plaintiffs show that the 'minimum baseline for beginning negotiations, or the range of prices which resulted from negotiations, was artificially raised (or slowed in its descent) by the collusive actions of the

12

defendants." *In re Cardizem CD*, 200 F.R.D. at 318; *see also In re Diamonds Antitrust Litigation*, 167 F.R.D. 374, 383 (S.D.N.Y. 1996) ("In a number of price-fixing cases concerning industries where discounts and individually negotiated prices are common, courts have certified classes where the plaintiffs have alleged that defendants conspired to set an artificially inflated base price from which negotiations for discounts began."). Therefore, to the extent that Plaintiffs successfully prove that Defendants' conspiracy resulted in an artificially inflated starting point for negotiations, any individualized negotiations do not prevent common issues from predominating as to proof of impact.

Defendants argue that the real estate market is local in nature, which makes this action unsuitable for class treatment. Defendants point out that most agents provide services for houses within a rather limited geographic area. However, the Court does not believe that any local issues would cause individual issues to predominate when proving impact. While the price of real estate may vary over the state of Kentucky, which may affect the end result of individual negotiations, this issue does not effect Plaintiffs' key allegation that Defendants conspired to establish an artificial baseline regardless of the price of real estate. However, if the local nature of the real estate market did threaten to make individual issues predominate in this litigation, the proper solution would be the use of geographically based subclasses, rather than the complete refusal of class certification. Subclasses would allow any local questions to be addressed in a collective fashion, while retaining the benefits of class treatment of the underlying conspiracy allegation.

Defendants next argue that the variety of individualized services offered by real estate brokers prevents common questions from predominating. Specifically, Defendants argue that the different residential real estate services offered by different brokers would require an individualized inquiry to determine what commission each class member would pay in the absence of the alleged

13

conspiracy.

As an initial matter, the Court notes that according to Plaintiffs' allegations 6% was the inflated starting point for any negotiations, regardless of the services offered by the individual broker. Therefore, Defendants arguments go more towards proving the amount of damages, rather than the fact of damages. Additionally, the Court believes that Defendants are overstating the variety of services offered by real estate brokers. "The product or service under scrutiny, when broken down to its bare essentials, is assistance in selling a 'used' single family home." *Davis v. Northside Realty Associates, Inc.*, 95 F.R.D. 39, 47 (D.C. Ga. 1982). The Court finds that "for purposes of class certification, the services extended by real estate brokers and their agents are viewed as a single homogenous product." *Id.* Finally, even if the individual Defendants offered a large variety of services, this would not prevent the impact issue from being predominated by the common issues discussed above.

Finally, Defendants argue that Dr. French's economic analysis is insufficient to prove class-wide impact. Defendants argue that based on Dr. French's analysis, the alleged conspiracy would result in a "cross-subsidy," in that individuals who sell homes of greater value pay more due to the conspiracy, but that individuals who sell homes of lesser value actually benefit from the conspiracy. Defendants also argue that Dr. French's conclusion that the general pricing structure of the brokerage market would not change in the absence of the conspiracy is not well founded.

Defendants objections to Dr. French's report are an improper "battle of the experts" at this stage in the litigation. *See In re Cardizem CD*, 200 F.R.D. at 311 ("At this stage, the Court should not delve into the merits of an experts opinion or indulge 'dueling between opposing experts.'"). At this time, before the completion of discovery, the Court is attempting to determine whether all the

14

parties would benefit by the resolution of this controversy on a class-wide basis. It is not the time to determine whether Dr. French is correct in his conclusions. Instead, the Court must determine whether his methodology is a colorable method of proving class-wide impact. 7AA Wright & Miller § 1781 ("if plaintiffs' assertion of a conspiracy affecting all members of the class is at least colorable, the court may allow the action to proceed under Rule 23 and move the case forward to an adjudication on the merits"). The Court finds that Dr. French's planned use of standard econometric methods to compare the distribution of real estate broker commissions in Kentucky to a benchmark established in a market unaffected by the alleged conspiracy to satisfies the impact requirement, at least at this time.

Nor are any individual issues concerning the amount of damages an obstacle to class certification. "[E]ven where there are individual variations in damages, the requirements of Rule 23(b)(3) are satisfied if the plaintiffs can establish that the defendants conspired to interfere with the free-market pricing structure." *In re Scrap Metal Litig.*, 527 F.3d 517, 535 (6th Cir. 2008). While Plaintiffs offer Dr. French's report as proof that the amount of damages may be proven through common proof, at this time it is sufficient for the purposes of class certification that Plaintiffs will attempt to prove liability through common proof. *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988) ("[T]he mere fact that questions peculiar to each individual member of the class action remain after the common question of the defendants liability have been resolved does not dictate the conclusion that a class action is impermissible.").

The allegations of price-fixing and the establishment of a supra-competitive commission rate will not vary among the class members. The nature and scope of the alleged conspiracy is an issue that goes to the heart of this litigation. When combined with the predominance of common issues

concerning impact over any individual issues raised by Defendants, the Court concludes that the class is sufficiently cohesive to warrant adjudication by class action. As such, the Court finds that common questions predominate over any questions affecting only individual class members.

**B. Superiority**

The Court also finds that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. It will be much more efficient to adjudicate the issue of the existence of the conspiracy as a class action. If tried in individual actions, the same Defendants would be brought in to each suit to prove the nature and scope of the alleged conspiracy. This would be a waste of resources, as well as posing a risk of inconsistent verdicts on the issue.

One policy behind the use of class actions is to "overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 247(E.D.N.Y.1998). Given the relatively small amount of damages in each individual claim in this case, a class action is superior to the alternative of bringing separate actions by the individual class members. Finally, as discussed above, the Court finds that a class action will be manageable, and will not result in numerous individualized mini-trials.

**C. Rule 23(b)(3) Conclusion**

The Court should err in favor of certification when there is some doubt whether to certify the class. *In re Foundry*, 242 F.R.D. at 402. Because discovery on the merits has not yet occurred, at this stage in the litigation the Court finds that certification is appropriate, as the requirements of Rule 23(a) and (b) have been satisfied. As such, the Court will grant Plaintiffs' motion and certify

the proposed class. If, after discovery on the merits is completed, it is apparent that Plaintiffs have no common proof that Defendants took any actions to establish a standard rate for their agents or affiliates, the Court would revisit the class certification determination. This could be done by either revisiting the class definition, establishing subclasses, or by decertifying the class.

### III. Certification of the Subclass

"When appropriate, a class may be divided into subclasses that are treated as a class under this rule." Fed Rule Civ. P. 23(c)(4). Plaintiffs, in arguing that a subclass should be certified, state that Defendants do not raise any specific arguments in opposition the subclass. Defendants argue that Plaintiffs do not raise any arguments in support of the subclass certification. The burden in on Plaintiff to show why a subclass is appropriate. Given the lack of argument as to why a subclass is appropriate, Plaintiffs' motion to certify the subclass is denied at this time.

### CONCLUSION

For the above reasons, Plaintiffs' Motion for Class Certification is GRANTED in part and DENIED in part.

An appropriate order shall issue.