UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:05-CV-612-R

CASEY WILLIAM HYLAND, ET AL.,                                             PLAINTIFFS

v.

HOMESERVICES OF AMERICA, INC., ET AL.,                                    DEFENDANTS

**OPINION AND ORDER**

This matter comes before the Court on Plaintiffs Christopher and Mystic Burnettes's Motion for Preliminary Approval of the Proposed Settlement of the Claims Against Re/Max International, Inc. (Docket #319). Plaintiffs have also filed a Supplemental Memorandum in Further Support of their motion (Docket #323). This matter is now ripe for adjudication. For the reasons that follow, Plaintiffs' Motion is DENIED.

**BACKGROUND**

Plaintiffs allege that between 1991 and 2005 (the "Class Period"), Defendants and their co-conspirators engaged in a conspiracy to inflate the price of commissions charged by real estate brokers for the purchase of real estate in Kentucky. Specifically, Plaintiffs focus on the alleged standard 6% commission charged by real estate brokers for their services. Plaintiffs allege that in the absence of Defendants' conspiracy, 6% of the purchase price would not be the standard commission charged by brokers. Furthermore, Plaintiffs allege that Defendants habitually refused to negotiate a lower commission rate. To the extent that Defendants would negotiate, their negotiations were based on the inflated 6% standard, which resulted in buyers paying a higher price than they would have paid in a competitive market, where 6% would not be the starting price for

negotiations.

Plaintiffs believe that as a direct result of Defendants' conspiracy to fix the price of real estate brokerage commissions, all persons who paid a commission to Defendants or their affiliates paid a commission higher than they would have paid absent Defendants' unlawful conduct.

There are 15 Defendants in this action. Plaintiffs have entered a settlement agreement with Defendant Re/Max International ("International"). Pursuant to the settlement, International will pay $46,250 in cash, and provide cooperation to Plaintiffs in their prosecution of this action against the remaining 14 Defendants. This cooperation will consist of International making employees available for interviews and depositions at Plaintiffs' expense. International will also make its employees available for the provision of declarations and affidavits, will assist in making former employees available to Plaintiffs, and will provide relevant documents at Plaintiffs' request. Finally, the cooperation will include the availability of International employees to testify at trial. In return, International will receive a release from all class members for any claims arising from or related to the paying, charging, or receiving of real estate commissions during the class period. Plaintiffs now request that the Court preliminarily approve the proposed settlement.

## DISCUSSION

Class actions may be settled or compromised only with the approval of the court and after giving notice of the proposed settlement to the class. Fed. R. Civ. P. 23(e). There is a three-step process that district courts follow when approving a class action settlement:

> (1) the court must preliminarily approve the proposed settlement, i.e., the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion; (2) members of the class must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the decree is fair to those affected, adequate and reasonable.

*Tennessee Assoc. of Health Maintenance Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001). In determining whether preliminary approval is appropriate, the Court should evaluate whether the proposed settlement "appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Nasdaq Market-Makers Antitrust Litigation*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).[1]

There is no evidence that the proposed settlement is anything other than the product of non-collusive negotiations, as this action has been vigorously litigated by all the parties. The proposed settlement also does not improperly benefit any segment of the class. The issue before the Court is whether the proposed settlement has any obvious deficiencies, and whether the settlement falls within the range of possible approval. The proposed settlement should be "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *In re Baldwin-United Corp.*, 105 F.R.D. 475, 482 (S.D.N.Y. 1984).

International is receiving a release for all claims concerning the paying of real estate commissions during the class period. Plaintiffs argue that the settlement confers substantial benefits

---

[1] As the Court must determine whether the proposed settlement falls within the range of possible approval, it is worth noting the factors the Court will consider when ultimately determining whether the settlement is fair, reasonable and adequate. These include:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Int'l Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. General Motors Corp.*, 479 F.3d , 615, 631 (6th Cir. 2007).

on the class in return for this release, and that the Court should grant preliminarily approved.

Plaintiffs state that the most important portion of the settlement is the cooperation agreement. It is unclear how much value the class will receive from the cooperation agreement beyond that which they would have received through the ordinary discovery process. Plaintiffs argue that a cooperating Defendant is more candid, forthcoming and confessional once its own liability is behind it. It is true that district courts have sometimes found a cooperation agreement to be valuable additional consideration to any monetary settlement in antitrust cases, although those settlements often involve a greater monetary recovery than that found in this case. *See e.g. In re Initial Public Offering Securities Litigation*, 226 F.R.D. 186, 198 (S.D.N.Y. 2005).

Under the terms of the settlement, the class would receive $46,250 from International. With a class of approximately 70,000 members, this amounts to a gross recovery of less than one dollar per class member.

Plaintiff argues that by receiving some money now, Plaintiffs will avoid the possibility of proceeding to trial and recovering no damages. However, the monetary value of the settlement will not even pay for the cost of the notice of the settlement to the class. If notice of the settlement were not combined with any other notices for the purposes of saving notice expenses, then this settlement would be of no monetary value to the class. In fact, if notice of the settlement were not combined with other required notices, this settlement would actually be a monetary net loss to the class. The remainder of the cost of notice would have to be paid from other proceeds obtained from other defendants.

Despite the settlement's negligible monetary recovery, the Court does not find that the settlement has no chance of preliminary approval. One reason for this that antitrust conspiracy

liability is joint and several. *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 646 (1981). With joint and several liability, the class will be able to recover the full amount of any damages, with a reduction in the amount of this settlement. Therefore, provided that the remaining defendants have enough resources to satisfy any damages award, there will be no reduction in the class's potential recovery due to this settlement if this action proceeds to trial.

The timing of the settlement also increases the chances for preliminary approval. The Court has certified this case as a class action, but the class has not yet received notice. Combining the required notice of class certification with notice of the proposed settlement will conserve the resources of the class. Since the Court will be directing notice to the class in any event, adding notice of the proposed settlement to the other notices will at least prevent this settlement from becoming a net monetary loss to the class. The settlement proceeds would also serve to defray the cost of notice of class certification.

Plaintiffs have also notified the Court that they have reached a settlement with at least one other Defendant. If other settlements are granted preliminary approval, the class's resources would be conserved by combining the all the communications with the class into a single notice.

However, because it is proffered that proposed settlements have been reached with multiple Defendants, the Court will not consider granting preliminary approval at this time. "If several such settlements are being negotiated, it is ordinarily wise to defer consideration until all are submitted, thereby saving the time and expense of successive notices and hearing and allowing the judge and class members to assess the adequacy of the settlements as a whole." Manual for Complex Litigation § 21.651. It would be helpful for the Court to consider the terms of all the proposed settlements as a whole when deciding if preliminary approval is appropriate. However, the Plaitniff

5

has not yet submitted the terms of the other settlements to the Court.

For this reason, the Court's consideration of Plaintiffs' request for preliminary approval will be deferred until it can be determined if all or a substantial number of the settlements as a whole merit preliminary approval.

## CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's motion for preliminary approval of settlement is DENIED with leave to refile.