UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CASEY WILLIAM HYLAND, et al.                                      PLAINTIFFS

v.                                              CIVIL ACTION NO. 3:05-CV-612-R

HOMESERVICES OF AMERICA, INC., et al.                             DEFENDANTS

## OPINION AND ORDER

On June 7, 2011, this court conducted a telephonic conference to hear argument on the plaintiffs' motion to compel answers to written discovery served on the HomeServices defendants.[1] The plaintiffs seek production of financial information related to cash flow between the HomeServices corporate parent and its affiliates in an effort to discover information which might establish supra-competitive brokerage fees. This court has certified a class of plaintiffs who were sellers of residential real estate in Kentucky during a four-year period when the defendants allegedly participated in a price-fixing conspiracy not to negotiate a 6% brokerage fee. The defendants object to the cash-flow discovery on grounds of relevance.[2] After thorough consideration of the parties' written memoranda and argument, the court concludes the objection is well taken and will deny the motion to compel.

The plaintiffs seek production of documents which reflect, generally, cash flow or asset transfer information. More specifically, the cash flow requests seek documentation of how much capital, cash or other assets and reserves were maintained by each HomeServices defendant and

---

[1]The HomeServices defendants are HomeServices of America, Inc., HomeServices of Kentucky, Inc., Semonin Realtors, and Rector-Hayden Realtors. The motion to compel also includes a motion to strike boilerplate objections and a motion for sanctions. (DN 435)

[2]Although the written responses include objections on grounds of burdensomeness, the defendants conceded during oral argument that their objection is purely relevance.

their affiliates; the amounts owed to creditors; and the transfer of assets, revenues, or fees between subsidiaries, affiliates, or parent entities to and from HomeServices of America.³ The requests specifically include transactions between the parent HomeServices's subsidiaries and its own parent corporation, a nonparty in this suit.

The plaintiffs contend the financial information directly and narrowly relates to the class action claim that the Homeservices parent participated, "shoulder to shoulder," with its subsidiaries and other defendants in a Commonwealth-wide, 15-year antitrust conspiracy to fix the residential real estate commission rate at 6%. The plaintiffs further argue that the party resisting discovery carries a heavy burden to prevail on their objection and that the scope of discovery in antitrust cases is "extremely broad." *See e.g., Kellam Energy, Inc. v. Duncan*, 616 F.Supp.215, 217 (D.Del. 1985) ("[T]here is a general policy of allowing liberal discovery in antitrust cases. ...Particularly where allegations of conspiracy or monopolization are involved ... broad discovery may be needed to uncover evidence of invidious design or pattern to monopolize or intent to conspire in violation of the antitrust laws.").

The magistrate judge disagrees, however, with any suggestion that the scope of discovery is beyond careful limitation in cases alleging horizontal price-fixing conspiracies. Rather, the discovery rules apply with equal force: parties may obtain discovery on any matter that is relevant or potentially relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1). Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978). "[I]t is well established that the scope of discovery

---

³The requests at issue are the Second Request for Production of Documents and Electronic Discovery, served April 30, 2009, numbers 90-92 and 35-38. The specific requests are quoted in docket no. 443 at p. 12.

is within the sound discretion of the trial court." *Hayes v. Equitable Energy Resources Co.*, 366 F.3d 560, 571 (6th Cir. 2001) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)).

The plaintiffs argue this court's previous rulings justify the scope of the requested discovery. The magistrate judge has carefully and thoroughly reviewed these opinions, and finds the opinion certifying the plaintiff-class salient, although not particularly dispositive, to the discovery dispute at hand. As Judge Thomas B. Russell observed, the plaintiffs allege the defendants "established a supra-competitive baseline of 6% for all negotiations concerning commission. ... The key issue is determining whether Plaintiffs can prove that Defendants' conspiracy caused the individual agents or franchisees to establish a 6% commission rate."[4] Judge Russell stated, "To the extent that Plaintiffs are successful in proving that 6% is a conspiratorially established standard, any proof that a Defendants' agents followed the rate would be proof that the class members who hired that particular agent was harmed by the conspiracy."[5]

On another occasion, Judge Russell aptly described the claim as one alleging that the defendants engaged in parallel price fixing.[6] Judge Russell further noted, and the plaintiffs confirmed during oral argument, that the plaintiffs assert their claim against the corporate parent defendant directly, through concerted action with its subsidiaries to commit wrongs against the

---

[4] Judge Russell ultimately held that common issues predominate because the evidence would focus on the actions of the defendants to enforce a conspiracy among their agents or franchisees, rather than individual plaintiff issues.

[5] Memorandum Opinion, Nov. 7, 2008 (docket no. 321), at 11-12. The plaintiffs further emphasize the court's observation that in an antitrust action the dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly. Opinion and Order, June 29, 2007 (docket no. 140), at 3.

[6] Opinion and Order, June 29, 2007 (docket no. 142), at 6.

-3-

plaintiffs (rather than piercing the corporate veil).[7]

In light of Judge Russell's prior opinions, the plaintiffs argue that the cash flow information is relevant circumstantially to show state of mind, motive and intent to conspire, elements of direct liability against the parent company, and to refute the defense that there are no specific allegations of conspiratorial acts. The plaintiffs argue forcefully that cash flow between these entities corroborates wrongful acts taken as part of a tacit conspiracy, which supports direct liability against the HomeServices parent corporation.

The defendants argue that the requests for cash-flow information constitute "discovery overuse" and are facially irrelevant. The HomeServices defendants have produced financial records, data and documentation including monthly, quarterly and annual financial documentation sales data and other records. The additional production of cash flow information, in the defendants' view, provides information that is not relevant to the disputed elements of this horizontal price-fixing claim, i.e., an agreement to price fix and each defendant's participation in the agreement. The defendants argue the information reflecting capital reserves, cash reserves, debts, and transfers of funds are not evidence of whether the underlying funds are supra-competitive profits. The fact of assets, debts, and transfers, the defendants argue, does not make it more or less likely that the proceeds reflect "excess" profit levels derived from supra-competitive fees.

After thorough consideration, the magistrate judge must respectfully agree with the defense position. During oral argument, the parties agreed there are no reported cases addressing discovery in particular which support the proposition that cash flow requests are relevant or have

---

[7]Opinion and Order, June 29, 2007 (docket no. 140), at 3.

potential relevance to any inquiry of supra-competitive gains.[8] No economist or accountant has opined that such data is necessary to establish price-fixing activity, and no reported case validates this far-ranging financial discovery. In the magistrate judge's view, the transfer of assets, assuming there are transfers, do not support a reasonable inference that the earnings are supra-competitive; it does not make a fact, supra-competitive profits, more likely than not. The plaintiffs allege a horizontal or parallel price fixing scheme, yet seek vertical information, which is unrelated to the core question whether the defendants participated in the alleged conspiracy. Whether these putative ill-gotten gains stay in subsidiaries or are transferred to the parent does not tend to show the existence of a conspiracy among the defendants.

The court being sufficiently advised,

**IT IS HEREBY ORDERED** that the plaintiffs' motions to compel, to strike and for sanctions (DN 435) are **DENIED.**

DATE:

Copies to counsel of record

1|0

---

[8]The magistrate judge agrees with the plaintiffs that the three cases cited in the defendants' response memorandum in support of the relevance objection offer little guidance.