UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:05-CV-612-R

**CASEY WILLIAM HYLAND, et al.**                                                **PLAINTIFFS**

**V.**

**HOMESERVICES OF AMERICA, INC., et al.**                         **DEFENDANTS**

## MEMORANDUM OPINION

This matter is before the Court upon Plaintiffs' motions for preliminary approval of three separate proposed settlements, with the following defendants: (1) the Realogy Defendants (Realogy Corporation, Century 21 Real Estate LLC, and Coldwell Banker Real Estate Corporation) (DN 529); (2) Re/Max International (DN 531); and (3) Re/Max of Kentucky-Tennessee (Suzy Watkins; Realtors 2000, Inc. d/b/a Re/Max Alliance; David Bischof Realty, LLC d/b/a Re/Max Connections; Properties East, Inc. d/b/a Re/Max Properties East; and Alliance Real Estate Services, LLC d/b/a Re/Max Alliance) (DN 550). Also before the Court is the HomeServices Defendants' motion to strike the most favored nation clause of the Plaintiffs' proposed settlement with the Realogy Defendants (DN 542). Regarding the motion to strike, Plaintiffs have filed a response (DN 546), the Reaology Defendants have filed a response (DN 547), and the HomeServices Defendants have filed a reply (DN 559). These matters are now ripe for adjudication.

## BACKGROUND

In this class action suit, filed on October 11, 2005, Plaintiffs allege that Defendants engaged in a price-fixing conspiracy to inflate the price of commissions charged by real estate brokers for the purchase of real estate in Kentucky. The remaining defendants can be subdivided into five groups: (1) the HomeServices Defendants (HomeServices of America, Inc.

and HomeServices of Kentucky, Inc. d/b/a Semonin Realtors and Rector-Hayden Realtors); (2) McMahan Company, Inc. d/b/a Coldwell Banker McMahan Company; (3) Re/Max International, Inc.; (4) Re/Max of Kentucky-Tennessee (Suzy Watkins; Realtors 2000, Inc. d/b/a Re/Max Alliance; David Bischof Realty, LLC d/b/a Re/Max Connections; Properties East, Inc. d/b/a Re/Max Properties East; and Alliance Real Estate Services, LLC d/b/a Re/Max Alliance); and (4) the Realogy Defendants (Realogy Corporation, Century 21 Real Estate LLC, and Coldwell Banker Real Estate Corporation).

On November 17, 2007, this Court certified a Rule 23(b)(3) class consisting of "All persons who paid a commission to Defendants and/or their affiliates . . . in connection with the sale of residential real estate (excluding initial sales of newly constructed homes) located in the Commonwealth of Kentucky during the period from October 11, 2001 to October 11, 2005 . . . ." DN 322. Defendants sought to appeal the Court's certification order; however, on March 13, 2009, the defendants' petition for leave to appeal the Court's order was denied by the Sixth Circuit. DN 325.

On August 17, 2009, this Court denied Plaintiffs' motion for a preliminary approval of a proposed settlement with Re/Max International. DN 331. Pursuant to that proposed settlement, Re/Max International would pay $46,250 in cash and provide cooperation to Plaintiffs in the prosecution of this action against the remaining defendants. This cooperation would have included Re/Max International making employees available for interviews and depositions, and for declarations and affidavits. Re/Max International would further provide relevant documents to Plaintiffs upon request and make its employees available to testify at the trial of this action. This Court declined to preliminarily approve of this settlement citing concerns over the low monetary value of the settlement in light of the costs of providing notice of the proposed

settlement. Specifically, "if notice of the settlement were not combined with other required notices, this settlement would actually be a monetary net loss to the class." DN 331 at 4. The Court then noted that "[i]f other settlements are granted preliminary approval, the class's resources would be conserved by combining . . . all the communications with the class into a single notice." *Id*. at 5. For these reasons, the Court deferred consideration of the request for preliminary approval until it could be determined if all or a substantial number of settlements as a whole merit preliminary approval. *Id*. at 6.

On November 23, 2011, Plaintiffs filed a motion for preliminary approval of a proposed settlement with the Realogy Defendants (DN 529). Plaintiffs simultaneously filed a motion renewing its previously denied motion for preliminary approval of the Re/Max International settlement (DN 531). Then, on December 15, 2011, Plaintiffs filed a motion for preliminary approval of a proposed settlement with the Re/Max of Kentucky-Tennessee group of defendants (DN 550).

## STANDARD FOR PRELIMINARY APPROVAL

Class actions may be settled or compromised only with the approval of the court and after giving notice of the proposed settlement to the class. Fed.R.Civ.P. 23(e). There is a three-step process that district courts follow when approving a class action settlement:

> (1) the court must preliminarily approve the proposed settlement, i.e., the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion; (2) members of the class must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the decree is fair to those affected, adequate and reasonable.

*Tennessee Assoc. of Health Maintenance Orgs., Inc. v. Grier,* 262 F.3d 559, 565-66 (6th Cir.2001). In determining whether preliminary approval is appropriate, the Court should evaluate whether the proposed settlement "appears to be the product of serious, informed, non-

collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Nasdaq Market-Makers Antitrust Litigation,* 176 F.R.D. 99, 102 (S.D.N.Y.1997).[1]

## ANALYSIS

As the Court previously stated in its Order denying Plaintiffs' previous motion for preliminary approval of the proposed settlement with Re/Max International, it would be helpful for the Court to consider the terms of all the proposed settlements as a whole when deciding if preliminary approval is appropriate.[2] Accordingly, the Court will separately examine the terms and conditions of each of the proposed settlements and then determine the adequacy of the settlements as a whole.

### I. Proposed Settlement with Realogy Defendants

a. <u>The Terms of the Proposed Settlement</u>

Plaintiffs and the Realogy Defendants reached this settlement with the mediation assistance of the Honorable Richard B. Solum, now retired. In consideration for a release by the

---

[1] As the Court must determine whether the proposed settlement falls within the range of possible approval, it is worth noting the factors the Court will consider when ultimately determining whether the settlement is fair, reasonable and adequate. These include:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.
>
> *Int'l Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. General Motors Corp.,* 479 F.3d, 615, 631 (6th Cir.2007).

[2] "If several such settlements are being negotiated, it is ordinarily wise to defer consideration until all are submitted, thereby saving the time and expense of successive notices and hearing and allowing the judge and class members to assess the adequacy of the settlements as a whole." Manual for Complex Litigation § 21.651.

Class Members, the Realogy Defendants have agreed to pay an amount up to $7,500,000 directly to class members, and up to $1,100,000 for the cost of notice, settlement administration, Class Counsel's costs, and attorneys' fees.

With respect to the amount to be paid directly to class members, upon the timely submission of a claim establishing that the dismissing plaintiff is a member of the class, the Realogy Defendants will pay the following amounts:

(1) $125 per claim for each dismissing plaintiff who is a member of the class by reason of having sold certain Kentucky residential real property during the class period through HomeServices of America or its affiliates;

(2) $75 per claim per claim for each dismissing plaintiff who is a member of the class by reason of having sold certain Kentucky residential real property during the class period through Realogy or its affiliates; and

(3) $30 per claim for each dismissing plaintiff who is a member of the class by reason of having sold certain Kentucky residential real property during the class period through the Re/Max or its affiliates or franchisees.[3]

According to the affidavit of Gary Jacobson, counsel for Plaintiffs, the amount to be paid directly to class members could total $7,536,965. The Reaology Defendants would make a payment of attorneys' fees and costs, in an amount to be approved by the Court, not to exceed $1,000,000. Additionally, the Realogy Defendants would make a payment of costs of direct mail notice and one-half of the costs of claims administration up to $100,000.

Plaintiffs contend that preliminary approval of their proposed settlement with the Realogy Defendants is proper based on "their experience, their knowledge of the strengths and weaknesses of the case, their analyses of the likely recovery at trial and after appeals, the risks of litigation, and of the [ ] factors [set forth in *Int'l Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. General Motors Corp*]." DN 529-1 at p. 10.

---

[3] A dismissing plaintiff who submits the approved claims forms and who sold more than one property through these defendants will receive from the Realogy Defendants, the appropriate sum in respect to each such sale.

      b. <u>The HomeServices' Defendants' Motion to Strike</u>

With respect to the Plaintiffs' proposed settlement with the Realogy Defendants, the HomeServices Defendants have filed a motion to strike paragraph 11, the Most Favored Nation (MFN) Clause. This MFN Clause provides as follows:

> 11. <u>Most Favored Nation.</u> The most favored nation clause shall apply to and only to settlements with the HomeServices Defendants. Effective upon the date hereof, [*unless there is a material change from present circumstances such that the prospect or amount of ultimate recovery from the HomeServices Defendants is substantially lessened or reduced*,] in the event that Dismissing Plaintiffs' settlement in this Action with any of the HomeServices Defendants provides a more favorable term or terms than the term or terms set forth herein, then the Realogy Defendants shall be entitled to the more favorable term or terms and this Settlement Agreement shall be amended to incorporate the more favorable term or terms. In the event that the more favorable term relates to the Settlement Consideration set forth in paragraph 5 hereof, the amount paid by the Realogy Defendants shall be equitably reduced to be the same as in the more favorable subsequent settlement. In that event, the Realogy Defendants shall be entitled to receive a payment, out of the funds to be paid by the HomeServices Defendant that would otherwise be paid to the benefit of the Class, to reduce the amount paid or to be paid by the Realogy Defendants per Class Member to the same level per Class Member as the amount paid or to be paid by the settling HomeServices Defendant; and such payment to the Realogy Defendants shall be made prior to any payment to the Class pursuant to the settlement with the HomeServices Defendant. Notwithstanding the foregoing, this provision does not apply to any term or terms that are contained in a settlement agreement for which plaintiffs and/or the HomeServices Defendants have moved for preliminary approval or entered into a Memorandum of Understanding prior to the date this Settlement Agreement is entered into. Example No.1: If Plaintiffs settled with the HomeServices Defendants for an aggregate consideration equal to $125 per claim for members of the Class who sold property through the HomeServices Defendants, $75 per claim for members of the Class who sold property through franchises of the Realogy Defendants or their affiliates, and $30 per claim for members of the Class who sold property through defendant RE/MAX or its affiliates or franchisees, then there shall be no credit or payment due under this most favored nations clause. Example No. 2: If Plaintiffs settle with the HomeServices Defendants for an aggregate consideration in which the payment is a specified sum (e.g., $3,000,000), then the aggregate consideration paid by the Realogy Defendants under this Settlement Agreement shall be compared against the aggregate sum paid by the HomeServices Defendants under the HomeServices settlement agreement for purposes of this most favored nations clause.

DN 529-3.

After the HomeServices Defendants filed a motion to strike the MFN Clause, the parties held a "meet and confer" on December 5, 2011. As a result of this meeting, Plaintiffs and the Realogy Defendants negotiated an amended MFN clause which contains a "material change" amendment. This material change clause is demarcated in brackets above. The amended MFN clause defines "material change" as "an important change in circumstances, such as (i) a grant of summary judgment or partial summary judgment for the HomeServices Defendants, (ii) a de-certification of the Class that has been certified in this action, (iii) an adjudication in favor of the HomeServices Defendants, or (iv) any other change in circumstances that is of substantially similar material significance as the previous examples." The amended MFN Clause also provides that "this provision shall terminate one year from the date hereof."

Despite the amendment to add the material change amendment, the HomeServices Defendants contend that this clause should be stricken from the proposed settlement with the Realogy Defendants because it is predatory, violative of public policy, and because the changes to the MFN clause are illusory. Plaintiffs responded that Class Counsel made a valid judgment in agreeing to the challenged MFN Clause, and that the HomeServices Defendants' motion is procedurally improper and otherwise unsupported in law. Additionally, the Realogy Defendants contend that the HomeServices Defendants lack legal standing to challenge the MFN Clause.

As an initial matter, the Court will address Plaintiffs' position that the HomeServices Defendants' motion to strike is procedurally improper. Federal Rules of Civil Procedure 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Court agrees with Plaintiffs that this Rule in unavailing to the HomeServices Defendants because the Plaintiffs' proposed settlement agreement is not a pleading. Further, "nonsettling defendants in a multiple defendant

litigation context have no standing to object to the fairness or adequacy of the settlement by other defendants, but they may object to any terms that preclude them from seeking indemnification from the settling defendants. Nonsettling defendants also have standing to object if they can show some formal legal prejudice to them, apart from loss of contribution or indemnity rights." 4 Newberg on Class Actions § 11:55.

The HomeServices Defendants contend that they have standing to object because the MFN Clause is an absolute economic and legal barrier to any settlement. However, "[m]ere allegations of injury in fact or tactical disadvantage as a result of a settlement simply do not rise to the level of plain legal prejudice." *Agretti v. ANR Freight Sys., Inc*., 982 F.2d 242, 247 (7th Cir. 1992) (citation omitted). Although the inclusion of the MFN Clause may put the HomeServices Defendants at a tactical disadvantage, it does not amount to a formal legal prejudice required to bestow standing to challenge the proposed settlement. Nevertheless, regardless of whether the HomeServices Defendants can show formal legal prejudice, it remains the Court's duty to determine whether the proposed settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *In re Baldwin-United Corp.,* 105 F.R.D. 475, 482 (S.D.N.Y.1984). Therefore, as part of this duty, the Court will consider whether the inclusion of the amended MFN Clause in the proposed settlement constitutes an obvious deficiency or militates against finding that the proposed settlement falls within the range of possible approval.

## II. Proposed Settlement with Re/Max International

The terms of the Plaintiffs' proposed settlement with Re/Max International are the same as the proposed settlement that this Court declined to preliminarily approve in its August 17, 2009 Order (DN 331). Plaintiffs contend that this Court should now preliminarily approve this

settlement because it has alleviated two of the concerns previously expressed by the Court: (1) it combines notice of the Re/Max International settlement with notice of additional settlements with other Defendants so as to conserve resources, and (2) it combines notice of the pendency of this certified class action to the Class so as to conserve resources.  Plaintiffs maintain that Re/Max International's cooperation constitutes valuable consideration in this settlement. Additionally, counsel for Plaintiffs have determined that the risks of holding Re/Max International liable are substantially greater than those same risks with respect to the other Defendants in this action.

### III.  Proposed Settlement with Re/Max of Kentucky-Tennessee

The terms of the Plaintiffs' proposed settlement with Re/Max of Kentucky-Tennessee are substantially similar to the terms of the proposed settlement with Re/Max International.  After the Court's entry of a final approval of the proposed settlement, Re/Max of Kentucky-Tennessee will make a payment of $42,500 as well as provide cooperation in the continued prosecution of this action against the non-settling Defendants in the form of interviews with officers and employees, provision of affidavits, deposition and trial testimony, and the provision and authentication of non-privileged documents.  In exchange, Re/Max of Kentucky-Tennessee will receive a release of the claims from Plaintiffs and class members.

Plaintiffs state that continued litigation against Re/Max of Kentucky-Tennessee poses unique risks due to its unique defenses such as the presence of arbitration clauses in its Franchisees' agreements, the enforcement of which posed a risk that a class would not have been certified and treble damages may not have been available.  Re/Max of Kentucky-Tennessee was the sub-franchisor of various Re/Max entities in Kentucky, but does not own these entities and they are not subsidiaries of Re/Max of Kentucky-Tennessee.

**IV. The Adequacy of the Proposed Settlement Agreements as a Whole**

There is no evidence that the proposed settlements with the Realogy Defendants, Re/Max International, and Re/Max of Kentucky-Tennessee are anything other than the product of non-collusive negotiations, as this action has been vigorously litigated by all the parties. Additionally, the proposed settlements are the product of lengthy negotiation between the parties involved and, at least with respect to the Realogy settlement, were negotiated with the assistance of a neutral mediator.

The proposed settlements also do not improperly benefit any segment of the class. With respect to the Realogy settlement, the differing amounts to be paid depending upon the broker represents a judgment regarding proof of the price-fixing allegations and the relative risks concerning the defendants' capability to respond to any substantial judgment against them and whether the corporate parent (which may have a greater capacity to respond) would ultimately be made liable for the acts of its subsidiaries. DN 529-2, Solum Declaration at ¶ 6. Therefore, the remaining issue before the Court is whether the proposed settlements have any obvious deficiencies, and whether the settlement falls within the range of possible approval. The proposed settlements should be "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *In re Baldwin-United Corp.,* 105 F.R.D. 475, 482 (S.D.N.Y.1984).

With respect to the Re/Max International and now the Re/Max of Kentucky-Tennessee settlements, the issue remains that these settlements provide negligible monetary value to the class members. However, the ability to combine notice of these proposed settlements with notice of the proposed Realogy settlement and notice of the pendency of this action does alleviate some of the concerns expressed by this Court in its August 17, 2009 Order. Additionally, due to the

extensive discovery that has already taken place, the opinions of Plaintiffs' counsel regarding the relative risks of proceeding with litigation against these defendants is entitled to some weight. *See Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 565 F.Supp. 2d 49, 57 (Dist. D.C. 2008). The Court is cognizant that complex antitrust litigation is rife with uncertainties, risks, and delays and that there is at least some value to the "cooperation agreement" which may improve the chance of recovery against the remaining defendants. Accordingly, the Court finds that the proposed settlements between the Plaintiffs and Re/Max International and Re/Max of Kentucky-Tennessee are sufficiently fair, adequate, and reasonable to justify notice to the settlement class for an opportunity to be heard.

With respect to the proposed settlement with the Realogy Defendants, the Court has certain reservations regarding the inclusion of the MFN Clause at this late stage of the litigation. The Court's principal concern is that the MFN Clause will significantly lessen the likelihood of any settlement between the HomeServices Defendants and Plaintiffs. If after completion of discovery it appears that Plaintiffs' case against the HomeServices Defendants is not as strong as once thought, Plaintiffs would be "straight-jacketed" from settling for an amount less than the settlement with the Realogy Defendants. However, the material change amendment does provide for some flexibility in this regard. For this reason, the Court does not find the inclusion of this MFN Clause to be a barrier to preliminary approval at this time.

## CONCLUSION

For the foregoing reasons, the Court finds that the proposed settlements are sufficiently fair, adequate, and reasonable to justify notice to the settlement class for an opportunity to be heard. Defendants' motion to strike (DN 542) is DENIED and Plaintiffs' motions for

preliminary approval of the proposed settlements (DN 529, DN 531, and DN 550) are GRANTED.

With respect to the proposed Notice of Pendency of Class Action, Proposed Partial Class Settlements and Hearing IT IS FURTHER ORDERED that, in each of the sections giving notice of the respective proposed settlements, Plaintiffs shall revise the "Object to Settlement" Option[4] to make clear that class members must send their objections, bearing the caption Hyland v. HomeServices of America, Civil Action No. 3:05-cv-612, to the Clerk of Court at the following address:

>  Office of the Clerk
>  Gene Snyder United States Courthouse
>  601 W. Broadway, Room 106
>  Louisville, Kentucky 40202

The appropriate orders shall issue.

---

[4] Located on pages 10, 17-18, and 23-24 of the Notice of Pendency of Class Action, Proposed Partial Class Settlements and Hearing.  DN 550-5.