UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:05-CV-612-R

CASEY WILLIAM HYLAND, et al.                                                    PLAINTIFFS

V.

HOMESERVICES OF AMERICA, INC., et al.                                           DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court upon Plaintiff's motion for final approval of the settlement of claims against Defendants Realogy Corporation, Century 21 Real Estate LLC, Coldwell Banker Real Estate Corporation, Avis Budget Group, Inc., f/k/a Cendant Corporation, REMAX International, Inc., REMAX Kentucky-Tennessee, Inc. Suzy Watkins, Realtors 2000, Inc. d/b/a REMAX Alliance, David Bischof Realty, LLC, d/b/a RE/MAX Connections, Properties East, Inc. d/b/a REMAX Properties East, and Alliance Real Estate Services, LLC, d/b/a REMAX Alliance (DN 601). Also before the Court is Plaintiff's motion for reimbursement of costs and/or interim award of attorneys' fees (DN 608). The Court held a final fairness hearing in this matter on April 17, 2012. This matter is now ripe for adjudication. For the following reasons, Plaintiffs' motions are GRANTED.

## BACKGROUND

In this class action suit, filed on October 11, 2005, Plaintiffs allege that Defendants engaged in a price-fixing conspiracy to inflate the price of commissions charged by real estate brokers for the purchase of real estate in Kentucky. The defendants can be subdivided into the following groups: (1) the HomeServices Defendants (HomeServices of America, Inc. and HomeServices of Kentucky, Inc. d/b/a Semonin Realtors and Rector–Hayden Realtors); (2) McMahan Company, Inc. d/b/a Coldwell Banker McMahan Company; (3) Re/Max International

Group (Re/Max International, Inc.; Properties East, Inc. d/b/a Re/Max Properties East; Alliance Real Estate Services, LLC d/b/a Re/Max Alliance; Realtors 2000, Inc. d/b/a Re/Max Alliance); (4) Re/Max of Kentucky/Tennessee, Inc.; and (5) the Realogy Defendants (Realogy Corporation, Century 21 Real Estate LLC, and Coldwell Banker Real Estate Corporation).

On November 17, 2007, this Court certified a Rule 23(b)(3) class consisting of "All persons who paid a commission to Defendants and/or their affiliates . . . in connection with the sale of residential real estate (excluding initial sales of newly constructed homes) located in the Commonwealth of Kentucky during the period from October 11, 2001 to October 11, 2005 . . . ." DN 322.  Defendants sought to appeal the Court's certification order; however, on March 13, 2009, the defendants' petition for leave to appeal the Court's order was denied by the Sixth Circuit.  DN 325.

On August 17, 2009, this Court denied Plaintiffs' motion for a preliminary approval of a proposed settlement with Re/Max International, citing concerns over the low monetary value of the proposed settlement in light of the costs of providing notice of the proposed settlement.  DN 331.  On November 23, 2011, Plaintiffs filed a motion for preliminary approval of a proposed settlement with the Realogy Defendants.  DN 529.  Plaintiffs simultaneously filed a motion renewing its previously denied motion for preliminary approval of the Re/Max International settlement.  DN 531.  Then, on December 15, 2011, Plaintiffs filed a motion for preliminary approval of a proposed settlement with Re/Max of Kentucky-Tennessee.  DN 550.  The Court preliminarily approved all three proposed settlements on January 17, 2012 and ordered that Plaintiffs provide notice of the class action and of the proposed settlements to class members.

Plaintiffs have now filed a motion for final approval of the three class action settlements and a motion for reimbursement of costs and/or an interim award of attorneys' fees.  The Court

held a final fairness hearing on April 17, 2012. No objections were filed with the Court, and no objectors appeared at the fairness hearing to comment or object on the proposed settlements. The Court is now prepared to issue its final decision on the class action settlements in this case.

## DISCUSSION

1. **The Proposed Settlements**

    a. **The Re/Max International and Re/Max of Kentucky-Tennessee Settlements**

    The terms of Plaintiffs' proposed settlement with Re/Max of Kentucky-Tennessee and the terms of the proposed settlement with Re/Max International are substantially similar. After the Court's entry of a final approval of the proposed settlement, Re/Max of Kentucky-Tennessee will make a payment of $42,500 and Re/Max International will make a payment of $46,250. Additionally, Re/Max of Kentucky-Tennessee and Re/Max International will provide cooperation in the continued prosecution of this action against the non-settling defendants in the form of interviews with officers and employees, provision of affidavits, deposition and trial testimony, and the provision and authentication of non-privileged documents. In exchange, Re/Max of Kentucky-Tennessee and Re/Max International will receive a release of the claims from Plaintiffs and class members.

    b. **The Realogy Settlement**

    Plaintiffs and the Realogy Defendants reached this settlement with the mediation assistance of the Honorable Richard B. Solum, now retired. In consideration for a release by the Class Members, the Realogy Defendants have agreed to pay an amount up to $5,096,640[1]

---

[1] According to the affidavit of Gary Jacobson, counsel for Plaintiffs, the amount to be paid directly to class members could total $5,096,640. At the time the Court preliminarily approved the Realogy Settlement, Plaintiffs estimated this amount to be $7,536,965. However, Counsel for Plaintiffs recently filed a supplemental declaration with a more conservative estimate of the

directly to class members, up to $1,000,000 for Class Counsel's costs and attorneys' fees, and up to $100,000 for the costs of direct mail notice and settlement administration. With respect to the amount to be paid directly to class members, upon the timely submission of a claim establishing that the dismissing plaintiff is a member of the class, the Realogy Defendants have agreed to pay the following amounts:

(1) $125 per claim for each dismissing plaintiff who is a member of the class by reason of having sold certain Kentucky residential real property during the class period through HomeServices of America or its affiliates;

(2) $75 per claim per claim for each dismissing plaintiff who is a member of the class by reason of having sold certain Kentucky residential real property during the class period through Realogy or its affiliates; and

(3) $30 per claim for each dismissing plaintiff who is a member of the class by reason of having sold certain Kentucky residential real property during the class period through the Re/Max or its affiliates or franchisees.[2]

The proposed Realogy Settlement also has a Most Favored Nation ("MFN") Clause, to which the HomeServices Defendants object. The Clause provides:

> 11. Most Favored Nation. The most favored nation clause shall apply to and only to settlements with the HomeServices Defendants. Effective upon the date hereof, **unless there is a material change from present circumstances such that the prospect or amount of ultimate recovery from the HomeServices Defendants is substantially lessened or reduced**, in the event that Dismissing Plaintiffs' settlement in this Action with any of the HomeServices Defendants provides a more favorable term or terms than the term or terms set forth herein, then the Realogy Defendants shall be entitled to the more favorable term or terms and this Settlement Agreement shall be amended to incorporate the more favorable term or terms. **For purposes of this Agreement, a "material change" shall mean an important change in circumstances, such as (i) a grant of summary judgment or partial summary judgment for the HomeServices Defendants, (ii) a de-certification of the Class that has been certified in this**

---

number of class members who sold residential real estate through each of the respective defendants. DN 619.

[2] A dismissing plaintiff who submits the approved claims forms and who sold more than one property through these defendants will receive from the Realogy Defendants, the appropriate sum in respect to each such sale.

>  **action, (iii) an adjudication in favor of the HomeServices Defendants, or (iv) any other change in circumstances that is of substantially similar material significance as the previous examples.**  In the event that the more favorable term relates to the Settlement Consideration set forth in paragraph 5 hereof, the amount paid by the Realogy Defendants shall be equitably reduced to be the same as in the more favorable subsequent settlement.  In that event, the Realogy Defendants shall be entitled to receive a payment, out of the funds to be paid by the HomeServices Defendant that would otherwise be paid to the benefit of the Class, to reduce the amount paid or to be paid by the Realogy Defendants per Class Member to the same level per Class Member as the amount paid or to be paid by the settling HomeServices Defendant; and such payment to the Realogy Defendants shall be made prior to any payment to the Class pursuant to the settlement with the HomeServices Defendant.  Notwithstanding the foregoing, this provision does not apply to any term or terms that are contained in a settlement agreement for which plaintiffs and/or the HomeServices Defendants have moved for preliminary approval or entered into a Memorandum of Understanding prior to the date this Settlement Agreement is entered into. Example No.1: If Plaintiffs settled with the HomeServices Defendants for an aggregate consideration equal to $125 per claim for members of the Class who sold property through the HomeServices Defendants, $75 per claim for members of the Class who sold property through franchises of the Realogy Defendants or their affiliates, and $30 per claim for members of the Class who sold property through defendant RE/MAX or its affiliates or franchisees, then there shall be no credit or payment due under this most favored nations clause. Example No. 2: If Plaintiffs settle with the HomeServices Defendants for an aggregate consideration in which the payment is a specified sum (e.g., $3,000,000), then the aggregate consideration paid by the Realogy Defendants under this Settlement Agreement shall be compared against the aggregate sum paid by the HomeServices Defendants under the HomeServices settlement agreement for purposes of this most favored nations clause.  **This provision shall terminate one year from the date hereof.**

DN 546-2.

The HomeServices Defendant objected to the inclusion of the MFN provision in the Realogy Settlement Agreement as predatory and violative of public policy.  After they filed a motion to strike to MFN provision, Plaintiffs and counsel for the Realogy Defendants amended the clause, adding the sentences that appear in bold above.  After the amendment, the HomeServices Defendants continued to object to the inclusion of the amended MFN provision, noting that the changes were merely illusory.  In the Court's order preliminarily approving the

Realogy Settlement, the Court found that the HomeServices Defendants did not have standing to object to the MFN provision because they had not shown that its inclusion would result in formal legal prejudice.  Reviewing the settlement agreement for fairness, the Court noted its reservations regarding the MFN provision.  Specifically, the Court noted that its inclusion would significantly lessen the likelihood of any settlement between the HomeServices Defendants and Plaintiffs.  However, because the material change amendment provided some flexibility, the Court did not find its inclusion to be a barrier to preliminary approval.

**2.   Plaintiff Provided Proper Notice**

The Court finds that the notice process was adequate and consistent with Federal Rule of Civil Procedure 23 and the standards of due process.  Rust Consulting, Inc. ("Rust"), the settlement administrator, was responsible for disseminating notice to the class members.  From January 27, 2012 to February 28, 2012, Rust mailed a total of 122,490 notice packets to the list of class members provided to it by Plaintiffs' counsel.  DN 601-5 at ¶ 12.  In response to inquiries from potential class members, Rust mailed an additional 27 notice packets. *Id*. at ¶ 14.  As of March 22, 2012, the United States Postal Service had returned 22,608 notice packets as undeliverable without forwarding addresses; 9,066 of these notice packets were re-mailed to the class members after new addresses were located.  *Id*. at ¶ 15.  On February 3, 2012 and February 8, 2012, publication notice was published in 13 newspapers.  *Id*. at ¶ 17.  Although pursuant to this Court's order banner advertisements were to appear on Zillow.com and Homes.com, Zillow.com refused to allow the banner advertisement.  In lieu of banner advertisement on Zillow.com, Rust caused the banner advertisement to appear on Realtor.com.  As of March 3,

2012, the online banner advertisements had delivered 1,028,974 impressions. *Id*. at ¶ 18.

Additionally, a website dedicated to the settlement was established.[3]

### 3. Final Approval of the Settlement

The Court may approve a settlement that would bind class members only after a hearing and a determination that the settlement is fair, reasonable, and adequate. Fed.R.Civ.P. 23(e)(2). The United States Court of Appeals for the Sixth Circuit has held the following seven factors should "guide the inquiry":

> (1) the risk of fraud or collusion;
> (2) the complexity, expense and likely duration of the litigation;
> (3) the amount of discovery engaged in by the parties;
> (4) the likelihood of success on the merits;
> (5) the opinions of class counsel and class representatives;
> (6) the reaction of absent class members; and
> (7) the public interest.

*Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of America v. Gen. Motors Corp.,* 497 F.3d 615, 631 (6th Cir.2007) (internal citations omitted). No one of these factors is dispositive. Rather, all are to be weighed and considered in light of the particular demands of the case. *See, e.g., Grenada Investments, Inc. v. DWG Corp.,* 962 F.2d 1203, 1205-06 (6th Cir.1992). Federal policy favors class action settlement. *Int'l Union,* 497 F.3d at 632. In fact, "[o]nce preliminary approval has been granted, a class action settlement is presumptively reasonable, and an objecting class member must overcome a heavy burden to prove that the settlement is unreasonable." *Levell v. Monsanto Research Corp.,* 191 F.R.D. 543, 550 (S.D.Ohio 2000) (citing *Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir.1983); *Bronson v. Bd. of Educ. of City School Dist. of Cincinnati,* 604 F.Supp. 68, 71 (S.D.Ohio 1984)).

### a. The Risk of Fraud or Collusion

---

[3] www.KentuckyRealEstateLitigation.com.

"'Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary.'" *Thacke v. Chesapeake Appalachia, L.L.C.,* 695 F.Supp.2d 521, 531 (E.D. Ky. 2010) (quoting *Leonhardt v. ArvinMeritor, Inc.,* 581 F.Supp.2d 818, 838 (E.D.Mich.2008)). This Court discussed the risk of fraud or collusion briefly in its preliminary approval of the settlements, finding:

> There is no evidence that the proposed settlements with the Realogy Defendants, Re/Max International, and Re/Max of Kentucky-Tennessee are anything other than the product of non-collusive negotiations, as this action has been vigorously litigated by all the parties. Additionally, the proposed settlements are the product of lengthy negotiation between the parties involved and, at least with respect to the Realogy settlement, were negotiated with the assistance of a neutral mediator.
>
> The proposed settlements also do not improperly benefit any segment of the class. With respect to the Realogy settlement, the differing amounts to be paid depending upon the broker represents a judgment regarding proof of the price-fixing allegations and the relative risks concerning the defendants' capability to respond to any substantial judgment against them and whether the corporate parent (which may have a greater capacity to respond) would ultimately be made liable for the acts of its subsidiaries. DN 529-2, Solum Declaration at ¶ 6.

DN 568 at p. 9.

Since that time, the Court has not been presented with any additional information which may evidence fraud or collusion with respect to the settlements. However, the HomeServices Defendants continue to object to the inclusion of the MFN Clause in the Realogy Settlement. After hearing from the parties at the fairness hearing, the Court finds that the inclusion of the MFN Clause is not reason to deny approval of the proposed settlements. The inclusion of the MFN clause was suggested by the Hon. Richard Solum, an impartial mediator. Further, the inclusion of the MFN clause helped induce the Realogy Defendants to enter the settlement, thereby conferring a benefit to the class. Although its inclusion may lessen the likelihood of any settlement with the HomeServices Defendants, the MFN clause does not preclude settlement with the non-settling defendants and the material change amendment does provide some

flexibility in this regard. Accordingly, the Court finds no evidence of collusion or fraud, and this factor weighs in favor of finding the settlement agreements to be fair, reasonable, and adequate.

### b. The Complexity, Expense, and Likely Duration of the Litigation

"In evaluating a proposed class settlement, the Court must also weigh the risks, expense and delay the plaintiffs would face if they continued to prosecute the litigation through trial and appeal." *Thacker,* 695 F.Supp.2d at 531 (citations omitted). The Court weighs these factors against the recovery provided by the settlement. *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 523 (E.D.Mich.2003).

Several factors weigh in favor of settlements: the complexities of anti-trust litigation, the continued costs associated with the ongoing litigation, the likelihood of appeals, the large class size, and the lengthy duration of this litigation, as evidenced by the extensive motion practice engaged in by the parties up to this point. This litigation was filed in 2005. Since that time, counsel for Plaintiffs state that they have spent a collective 16,606.07 hours pursuing this action. Although Plaintiffs are continuing with litigation against the non-settling defendants and will therefore continue to incur expenses, the length and complexity of the continuing litigation will likely lessen by an appreciable amount if the proposed settlements were approved. For these reasons, the Court finds that this factor weighs slightly in favor of settlement.

### c. The Amount of Discovery Engaged in by the Parties

Discovery in this action ended on April 6, 2012. The parties have completed more than forty depositions, have exchanged four expert reports and four supplemental expert reports, and have reviewed more than one million pages of documents. Declaration of Fred T. Isquith, DN 601-7 at ¶ 4-5. Thus, there are substantial factual bases on which to premise settlement. *See Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004). Because the parties have completed a

lengthy and extensive discovery process, the Court finds that this factor weighs in favor of settlement.

### d. The Likelihood of Success on the Merits

The Court must also weigh the likelihood of success on the merits in considering the whether the settlement is fair, reasonable, and adequate. As the Sixth Circuit noted, "The fairness of each settlement turns in large part on the bona fides of the parties' legal dispute. Although this inquiry understandably does not require us to 'decide the merits of the case or resolve unsettled legal questions,' we cannot 'judge the fairness of a proposed compromise' without 'weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement.'" *Int'l Union,* 497 F.3d at 631 (quoting *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n. 14 (1981)).

Although Class counsel contend that they are constrained from fully disclosing all of the risks they considered in determining that the settlements are in the best interest of the class, Plaintiffs acknowledge that two of the settling defendants made no real estate sales in Kentucky and that the remaining settling defendants had business practices calling for sales associates to make a case-by-case determination of the level of brokerage commissions. In light of this revelation, the likelihood of success on the merits against these settling defendants is low. Additionally, class action litigation in particular is unpredictable. *See, e.g., New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006). In contrast, the settlements offer a reasonable resolution that provides Plaintiffs with the cooperation of the Re/Max International and the Re/Max of Kentucky-Tennessee Defendants and with a significant monetary amount from the Realogy Defendants. Accordingly, the Court finds that this factor weighs in favor of final approval of the settlements.

### e. The Opinions of Class Counsel and Class Representatives

"In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference." *Thacker,* 695 F.Supp.2d at 532. Class counsel in this case are experienced in the areas of class actions and antitrust cases. These attorneys have conducted arm's-length negotiations and have completed extensive discovery in order to assess the merits of the settlements. It is the opinion of class counsel that, "[i]n light of the inherent risks of class litigation and the complexity of the issues and proof herein, and of the benefits offered by the proposed Settlements, Class Counsel recommend that these proposed Settlements be finally approved as fair, reasonable, and in the best interests of the Class." DN 601-1 at p. 5-6. Accordingly, the Court finds that this factor weighs in favor of settlement.

### f. The Reaction of Absent Class Members

In analyzing a proposed settlement, it is appropriate to consider the reaction of the Settlement Class. *Brotherton v. Cleveland,* 141 F.Supp.2d 894, 906 (S.D.Ohio 2001). "A certain number of . . . objections are to be expected in a class action . . . If only a small number are received, the fact can be viewed as indicative of the adequacy of the settlement." *In re Cardizem CD Antitrust Litigation,* 218 F.R.D. 508, 527 (E.D.Mich.2003). Here, there have been no objectors to the proposed settlements. Accordingly, the Court finds that this factor weighs in favor of settlement.

### g. The Public Interest

The Court finds that the settlement serves the public interest. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re*

*Cardizem,* 218 F.R.D. at 530 (quoting *Granada Inv., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992)); *accord Ehrheart v. Verizon Wireless,* No. 08-4323, 2010 WL 2365867, at *3 (3d Cir. June 15, 2010) ("Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."). Further, the public has a great interest in enforcing federal antitrust laws, which are our "Magna Carta of free enterprise." *United States v. Topco Associates, Inc.*, 405 U.S. 596, 610 (1972).

In conclusion, the Court's analysis of these seven factors demonstrates that the settlements should be approved as fair, reasonable, and adequate.

### 4. <u>Attorneys' Expenses</u>

"As with attorneys' fees, an award of costs and expenses, is also a matter left to the discretion of the trial court." *In re Rio Hair Naturalizer Prods. Liab. Litig.,* No. MDL 1055, 1996 WL 780512 at * 19 (E.D. Mich. Dec. 20, 1996). "[C]lass counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses." *In re Cardizem,* 218 F.R.D. at 535.

In accordance with the terms of the Realogy Settlement, class counsel requests $1,000,000 in costs and expenses. The Court has reviewed the reports of costs and expenses submitted by class counsel. These reports include claims, totaling $1,083,383.82, for experts and consultant fees, legal research, travel, document vendors, filing fees, services fees, court reporter fees, photocopies, postage and delivery, computer and office supplies, and telephone and fax costs. In light of the length of this litigation and the voluminous document discovery, the Court

finds that the requested $1,000,000 figure is a reasonable recovery of costs as documented. In as much as the actual costs exceed the amount awarded as costs in this action, the Court makes no ruling on the reasonableness of the hourly rates requested by counsel.

## CONCLUSION

For the foregoing reasons, and pursuant to Federal Rule of Civil Procedure 23, the Court finds that the settlement agreements entered into by the parties are fair, reasonable, and adequate. The Court will GRANT Plaintiffs' motion of final approval of the class action settlements (DN 601) and will GRANT Plaintiffs' motion for reimbursements of costs in the amount of $1,000,000 (DN 608). A separate order consistent with this Memorandum Opinion will be entered.